[No. A119346. First Dist., Div. One. Dec. 4, 2008.]

MERCURY INSURANCE COMPANY, Plaintiff, Cross-defendant and Respondent, v.
DAVID DOUGLAS PEARSON, Defendant, Cross-complainant and Appellant.

## Counsel

Law Offices of Ball & Yorke, Allen R. Ball and Esther R. Sorkin for Defendant, Cross-complainant and Appellant.

Hager & Dowling, John V. Hager and Holly C. Blackwell for Plaintiff, Cross-defendant and Respondent.

## Opinion

**MARGULIES, J.**—David Douglas Pearson was struck by an uninsured motorist while crossing an intersection on foot. Pearson was listed as an additional driver under an automobile insurance policy issued by the Mercury Insurance Company (Mercury) to Pearson's fiancée as the named insured. Asserting that the uninsured motorist provisions of the policy did not cover Pearson for injuries suffered in a pedestrian accident, Mercury denied coverage for Pearson. Mercury sued Pearson for declaratory relief and Pearson cross-claimed against Mercury and the insurance agents who procured the policy. Following Mercury's demurrer and motion for judgment on the pleadings, the trial court granted judgment in favor of Mercury.

On appeal, Pearson contends that (1) Mercury's insurance policy is ambiguous and created a reasonable expectation of coverage on his part, and (2) he should be permitted to amend his cross-complaint to allege causes of action against Mercury for vicarious liability and reformation of the policy. Finding no merit in these contentions, we affirm.

## I. BACKGROUND

On October 22, 2005, Pearson and his fiancée, Susan Hyung, were struck by a speeding car driven by an uninsured motorist as they attempted to walk across an intersection at a crosswalk. Hyung died from her injuries and Pearson was badly injured. Pearson had purchased an automobile insurance policy issued by Mercury (the policy) covering Hyung and himself, which

was in force at the time of the accident. Hyung was designated as the "named insured" in the policy. The policy's declarations page listed Pearson and Hyung as "drivers," and a "Designated Persons Endorsement" to the policy specified that Pearson was an additional person insured under the bodily injury coverage of the policy.

Hyung's heirs made a claim under the uninsured motorist coverage of the policy. Mercury paid its full per-person limit of $100,000 on the Hyung claim. Pearson also made a claim for uninsured motorist benefits under the policy. Mercury denied Pearson's claim on the grounds that (1) the uninsured motorist benefits under the policy only applied to "named insureds" or their spouses, or to relatives living in their household, unless the accident occurred "in or upon entering into or alighting from an insured motor vehicle"; and (2) Pearson did not qualify for uninsured motorist benefits because he was a pedestrian when the accident occurred and was not Hyung's spouse or her relative living in the same household.

Mercury sued Pearson for declaratory relief that Pearson was not entitled to uninsured motorist benefits under the policy. Pearson cross-complained against Mercury, insurance agent, Jim Schoensiegel, and Vicencia & Buckley Insurance Services, Inc., an insurance agency (hereafter Vicencia), alleging causes of action for declaratory relief and reformation, breach of insurance contract, breach of the implied covenant of good faith and fair dealing, professional negligence, and breach of contract. Mercury demurred on the grounds that (1) as a matter of law, the policy did not provide uninsured motorist coverage for Pearson; (2) Pearson's claim for breach of the implied covenant of good faith and fair dealing also failed because there was no coverage under the policy; and (3) Pearson's causes of action for professional negligence and breach of contract failed to state a claim against Mercury.

The trial court sustained Mercury's demurrer without leave to amend. Because the issue of coverage framed by its original complaint was still before the court, Mercury followed its demurrer with a motion for judgment on the pleadings, which was also granted. Pearson timely appealed from the ensuing judgment against him and in favor of Mercury.

## II. DISCUSSION

Pearson contends that (1) ambiguities in the policy language and the Designated Persons Endorsement show that his coverage was coextensive with Hyung's; and (2) in the alternative, the judgment should be reversed to permit him to proceed on theories of vicarious liability and/or reformation of the policy.

A. *Policy Ambiguity*

 1. *Relevant Policy Provisions*

The relevant provisions of the policy are as follows:

Under the capitalized heading, "IMPORTANT NOTICE," appearing on a separate page immediately following the cover page of the policy, is the following text: "Unless drivers residing with the Insured are NAMED in the declarations, coverage may not be afforded. If you desire coverage for drivers other than those shown, request your agent/broker to have your policy amended to list the additional drivers."

Parts I, II, III, and IV of the policy provide coverage for defense and indemnity with respect to third party bodily injury and property damage liability claims (Part I), medical services (Part II), vehicular damage (Part III), and damages caused by uninsured motorists (Part IV). Parts I, II, and IV each contain separate clauses specifying the persons who are insured under them, while Part III specifies the vehicles that it covers. Under Part I, the persons insured include, with respect to accidents involving automobiles listed in the policy, the named insured or named insured's spouse who resides with the named insured, persons listed as drivers in the policy declarations, persons using an owned automobile with the permission of the named insured, and persons residing with the permissive user if related to him or her by blood, marriage, or adoption. With respect to automobiles not listed in the policy, Part I affords coverage to the named insured or named insured's spouse who resides with the named insured, and to relatives who reside with the named insured and are listed as drivers in the policy declarations.

Part II affords medical expense coverage to the named insured, each relative of the named insured who lives with the named insured and sustains bodily injury while occupying a listed automobile or who, as a pedestrian, sustains injury caused by a moving automobile, any other person injured while occupying a listed automobile if driven by the named insured, a relative who lives with the named insured, or a person driving with the named insured's permission.

The uninsured motorist coverage provisions, contained in Part IV of the policy, state that Mercury will "pay all sums which the insured . . . shall be legally entitled to recover as damages from the owner, or operator of an uninsured motor vehicle because of bodily injury, sustained by the insured,

caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicles." Immediately below the description of uninsured motorist coverage provided by the policy is a list of definitions. The policy defines the unqualified term "Insured" for purposes of Part IV to include (1) "the named insured and the spouse of the named insured and while residents of the same household, relatives of either while occupants of a motor vehicle or otherwise"; and (2) any other person "while in or upon or entering into or alighting from an insured motor vehicle." This definition mirrors statutory definitions required by Insurance Code section 11580.2.[1]

The policy also contained a Designated Persons Endorsement. This endorsement listed Pearson as a "designated person," and amended the definition of "Persons Insured" in Part I of the policy to include "the person(s) designated by name in this endorsement." Immediately below the language amending the policy, the endorsement includes the following four sentences, each set apart in a separate paragraph: "It is agreed that the designated person(s) resides with the 'Named Insured,' but is not a 'relative' as the words 'Named Insured,' and 'relative' are defined in the policy. [¶] This policy does not provide coverage for any motor vehicle owned by, or acquired from, or available for the regular use of, a person(s) residing with the Named Insured unless such person(s) is occupying a motor vehicle listed in the policy declarations. [¶] *The uninsured motorist coverage does not provide coverage for bodily injury sustained by a resident of the same household as the Named Insured, who is not a relative, unless such person(s) is occupying a motor vehicle listed in the policy declarations. [¶] It is agreed the designated person(s) is a resident of the same household as the Named Insured, is not a relative, and is only provided coverage when operating or occupying a motor vehicle listed in the policy declarations.*" (Italics added.) The endorsement contained a warning in capital letters stating, "DO NOT SIGN THIS AGREEMENT UNTIL YOU READ AND UNDERSTAND IT." Just below the printed warning, Hyung was required to write out by hand the words, "I have read and understand this document and I do read English." The endorsement was signed by Pearson as a "resident driver" and by Hyung as the named insured.

---

[1] With exceptions not relevant here, Insurance Code section 11580.2, subdivision (a)(1) requires that all automobile insurance policies issued in this state include coverage within specified dollar limits for "all sums [the insured] . . . shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle." Subdivision (b) of section 11580.2 provides in relevant part that, "as used in subdivision (a) if the named insured is an individual 'insured' means the named insured and the spouse of the named insured and, while residents of the same household, relatives of either while occupants of a motor vehicle or otherwise, . . . and any other person while in or upon or entering into or alighting from an insured motor vehicle . . . ."

## 2. *Analysis*

◼ Where a case turns on the interpretation of an insurance policy, the court reviews the policy's terms under the ordinary rules of contract interpretation. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].) If the policy language is clear and explicit, it governs. (*Ibid.*) If the policy terms are ambiguous or uncertain, the court must attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations. (*Id.* at p. 1265.) If this rule does not resolve the ambiguity, it must be resolved against the insurer. (*Ibid.*)

◼ In determining whether an ambiguity exists, the words of the policy must be interpreted according to the plain meaning that a layperson would ordinarily attach to them. (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 807 [180 Cal.Rptr. 628, 640 P.2d 764].) Policy language is ambiguous when it *reasonably* may be interpreted in two or more ways. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].) "Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." (*Reserve Insurance Co. v. Pisciotta*, at p. 807.) Moreover, the language must be interpreted in the context of the policy as a whole, and in light of the circumstances of the case. It cannot be deemed to be ambiguous in the abstract. (*Bank of the West v. Superior Court, supra*, 2 Cal.4th at p. 1265.)

Pearson argues· that the "Important Notice" at the front of the policy created an expectation that the coverage afforded to additional drivers named in the declarations page would be coextensive with that afforded to the named insured. In Pearson's view, the fact that the uninsured motorist provisions do not in fact provide coextensive coverage for additional drivers merely creates an ambiguity or conflict in the policy's terms that must be resolved in favor of coverage. The Designated Persons Endorsement, according to Pearson, may be construed either as surplusage or an ineffective waiver of the additional uninsured motorist coverage provided due to the ambiguity created by the "Important Notice" placed at the front of the policy.

At the outset, we reject Pearson's claim that the "Important Notice," read in combination with the uninsured motorist provisions, creates an ambiguity about the extent of uninsured motorist coverage for additional drivers. Construed according to its plain meaning, the "Important Notice" is simply a courtesy warning to the policyholder that *drivers* residing with the named insured who are not listed on the declarations page are not necessarily

afforded the same coverage under the policy as additional *drivers* who *are* listed in the declarations page. The word "drivers" appears three times in the notice. This notice simply warns policyholders of the fact that the *liability* provisions of the policy—the only provisions that apply exclusively to *drivers*—apply differently to potential drivers who reside with the named insured, depending on whether such persons are or are not listed as additional drivers in the declarations page.[2] The notice cannot reasonably be construed as a promise that, notwithstanding the actual language of the policy, a driver named in the declarations automatically receives the same coverage as the named insured for every type of loss, liability, or accident covered by the policy.

The Designated Persons Endorsement further undermines Pearson's position that the policy is ambiguous. The endorsement is clear and explicit that the uninsured motorist coverage would not provide coverage for bodily injury sustained by Pearson unless he was occupying a motor vehicle listed in the policy declarations, and that he had no coverage under any portion of the policy unless he was operating or occupying a motor vehicle listed in the declarations. He signed the endorsement, as did Hyung, and the endorsement contained a warning in capitalized lettering not to sign it "until you read and understand it."

With respect to the issue of whether Pearson was covered for bodily injuries he sustained when struck by an uninsured motorist while crossing a street on foot, we find no ambiguity in the policy. The policy's uninsured motorist provisions mirror the statutory definitions authorized by Insurance Code section 11580.2 and any asserted ambiguity in them may not be construed against Mercury. (*Interinsurance Exchange v. Marquez* (1981) 116 Cal.App.3d 652, 656 [172 Cal.Rptr. 263].)

■ The trial court properly sustained Mercury's demurrer and granted its motion for judgment on the pleadings based on the theory that the Mercury policy did not as a matter of law afford coverage for Pearson's injuries. We turn now to the issue of whether Pearson should nonetheless have leave to amend his cross-complaint to plead causes of action not based on the premise that the written policy issued to him provided coverage for his injuries.

---

[2] Thus, if a nonrelative member of the insured's household is sued for causing an accident while driving the named insured's covered automobile, the policy provides no defense or indemnity coverage under Part I, unless he or she is listed in the declarations as a driver or qualifies as a permissive user. If a relative who resides with the named insured is sued for causing an accident while driving a nonowned vehicle, the policy provides no defense or indemnity coverage under Part I, unless he or she is listed in the declarations as a driver.

B. *Vicarious Liability and Reformation*

Pearson concedes that he made no request for leave to amend his cross-complaint in the trial court, and failed to show in what manner he could have amended his pleading to state a viable cause of action against Mercury. He argues, correctly, that he is entitled to make such a showing for the first time on appeal, in reliance on the following language from *Performance Plastering v. Richmond American Homes of California, Inc.* (2007) 153 Cal.App.4th 659, 667–668 [63 Cal.Rptr.3d 537]: "A trial court's order sustaining a demurrer without leave to amend is reviewable for abuse of discretion 'even though no request to amend [the] pleading was made.' (Code Civ. Proc., § 472c, subd. (a).) While it is the plaintiff's burden to show 'that the trial court abused its discretion' and 'show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading' [citation], a plaintiff can make 'such a showing . . . for the first time to the reviewing court' [citation]."

Pearson maintains that the allegations of his cross-complaint are either sufficient as is to state causes of action for vicarious liability and reformation, or can be amended to state such causes of action.

With regard to vicarious liability, Pearson's cross-complaint alleged that in the event the policy did not afford coverage for his injuries, agent Schoensiegel and broker Vicencia were dual agents and that Mercury should therefore be held vicariously liable to him for their negligent failure to procure the coverage that he had requested, i.e., individual coverage for injuries to him caused by an uninsured motorist that was coextensive with the coverage afforded to Hyung. If the mere allegation of dual agency is insufficient to establish Mercury's vicarious liability, Pearson states that he can further allege that (1) Vicencia and Schoensiegel advertised to the public that they represent Mercury; (2) their advertising was approved by Mercury, which allows brokers to use its name and logo; (3) they are monitored and supervised by Mercury; and (4) Mercury lists Vicencia on its Internet Web site. Pearson points out that similar facts were held sufficient to impose vicarious liability on Mercury for illegal fees charged by its broker-agents. (See *Krumme v. Mercury Ins. Co.* (2004) 123 Cal.App.4th 924, 946 [20 Cal.Rptr.3d 485].) Pearson also proposes to allege that Mercury prohibits its agents and brokers from showing exemplar policies to prospective insureds and that Vicencia and Schoensiegel arbitrarily selected Hyung as the named insured without disclosing that he and Hyung would not be receiving equal coverage under the policy, as requested.

In our view, Pearson's cross-complaint, if amended as proposed, would not state a viable cause of action for vicarious liability against

Mercury. First, Pearson makes no claim that Vicencia and Schoensiegel exclusively represented Mercury.[3] If an insurance agent is the agent for several companies, and either selects the company with which to place the insurance or picks an insurer at the insured's direction, the insurance agent is the agent of the insured, not the insurer. (*Eddy v. Sharp* (1988) 199 Cal.App.3d 858, 865 [245 Cal.Rptr. 211].) Even if Vicencia and Schoensiegel were dual agents, any alleged negligence on their part in procuring the insurance Pearson requested was committed, as a matter of law, in their capacities as Pearson's agent. (See *Troost v. Estate of DeBoer* (1984) 155 Cal.App.3d 289, 298 [202 Cal.Rptr. 47].)

Second, the insurance policy provides that "[b]y acceptance of this policy the named insured agrees that . . . this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance." The policy further provides that an agent's oral statements do not change the terms of the policy. As discussed earlier, the Designated Persons Endorsement signed by Pearson and Hyung went to great lengths to ensure that Pearson understood his coverage was not coextensive with Hyung's. To the extent that Pearson alleges negligent misrepresentations by Vicencia and Schoensiegel about that fact, Mercury could not as a matter of law have authorized or ratified such misrepresentations in light of the policy's integration clause and Designated Persons Endorsement. (See *Everett v. State Farm General Ins. Co.* (2008) 162 Cal.App.4th 649, 662–663 [75 Cal.Rptr.3d 812].)

Pearson also contends that he either has stated or can state a cause of action for reformation based on mutual mistake or mistake by one party that is known or suspected by the other party. The only allegation concerning reformation in the cross-complaint states in relevant part: "[T]o the extent that the written terms of the policy may be read to exclude [Pearson's] entitlement to uninsured motorist benefits . . . , said terms do not comport with the express intent of the parties and the course of dealings of the parties, and should, therefore, be reformed." We do not find that single, conclusory allegation sufficient to state a cause of action for reformation based on mistake. Pearson must be able to allege facts showing that he and Mercury agreed to coverage terms providing him with the same uninsured motorist coverage as Hyung, and that he thereafter accepted the policy issued to him by Mercury under the mistaken belief that it provided such coverage. (See

---

[3] Such a claim would contradict the allegation of Pearson's cross-complaint that Vicencia and Schoensiegel "assured [Pearson] that they would find automobile insurance coverage consistent with [Pearson's] needs and desires, and, that they would obtain quotes from insurers for those types of policies."

*Lemoge Electric v. County of San Mateo* (1956) 46 Cal.2d 659, 663–664 [297 P.2d 638]; *Genuser v. Ocean Acc. etc. Corp.* (1941) 42 Cal.App.2d 673, 675 [109 P.2d 753].)

▮ On its face, the "Designated Persons Endorsement" signed by Pearson and Hyung negates any claim for reformation by Pearson. That endorsement stated clearly and explicitly that Pearson would not have the same uninsured motorist coverage under the policy as Hyung. Although there is case law holding that the fact that a party seeking reformation has read the contract does not prevent a court from finding that it was executed under a mistake (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 529 [117 Cal.Rptr.2d 220, 41 P.3d 46]), the equitable remedy of reformation is not available for a mistake of fact that is caused by the neglect of a legal duty. (Civ. Code, § 1577.) Here, Pearson alleged in his cross-complaint that he was the prime mover in obtaining the subject insurance policy—the person who initially sought "coverage benefits for himself and his vehicles," who communicated his intentions and needs to Vicencia and Schoensiegel, who corresponded with them about the policy, and who actually paid for the policy.[4] As between Hyung and Pearson, it was Pearson who assumed the responsibility for this transaction at every step. But notwithstanding Pearson's professed belief that he was purchasing the same coverage for himself as Hyung's, he nonetheless accepted the policy without question despite being presented with an endorsement advising him in clear and explicit language that the policy did not in fact afford him the same coverage as Hyung. The endorsement contained a warning in capitalized letters stating, "DO NOT SIGN THIS AGREEMENT UNTIL YOU READ AND UNDERSTAND IT." In our view, these facts—which cannot be pleaded out of existence—show that either Pearson was not actually concerned about whether he was covered when not occupying a covered vehicle, or that he violated a legal duty by ignoring a prominently displayed legal warning and signing the agreement when he had not in fact read or understood it. In either case, we find that Pearson would not be entitled to reformation as a matter of law.

For these reasons, we hold that the trial court did not abuse its discretion in denying Pearson leave to amend his cross-complaint.

---

[4] Contrary to Pearson's claim, the fact that he paid the premium for the policy does not tend to prove that he intended to receive coverage at least equal to Hyung's. Pearson's individual coverage was far from worthless. He had the same liability and medical coverage as Hyung under the policy, and the same uninsured motorists coverage as Hyung's when he was occupying a listed vehicle. This is completely unlike the fact pattern in *Nat. Auto. & Cas. Co. v. Ind. Acc. Com.* (1949) 34 Cal.2d 20 [206 P.2d 841], where the court observed, "it is unlikely that [the owner] would agree to take a [worker's compensation] policy which excluded relatives when his only employees were in that category." (*Id.* at p. 23.)

## III. DISPOSITION

The judgment in favor of Mercury is affirmed.

Marchiano, P. J., and Swager, J., concurred.