Filed 10/31/13  Kantor v. Mid-Century Ins. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KEN KANTOR,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>MID-CENTURY INSURANCE COMPANY,<br><br>Defendant and Respondent. | A136878<br><br>(Contra Costa County<br>Super. Ct. No. C11-00951) |

Plaintiff and appellant Ken Kantor (Kantor) appeals the judgment entered in favor of defendant and respondent Mid-Century Insurance Company (Mid-Century) after the trial court granted Mid-Century's motion for summary judgment on the grounds the damage to Kantor's residence did not constitute a "collapse," and therefore, was not a covered loss under the terms of his homeowners insurance policy.  We shall affirm.

## BACKGROUND

Kantor filed his complaint against Mid-Century in April 2011, attaching a copy of the Farmers Next Generation Homeowners Policy, No. 93961-56-74 (Policy), issued by Mid-Century for the period of August 17, 2009 to June 1, 2010, and under which Kantor is the named insured.  The complaint alleged as follows:  While the Policy was in effect in December 2009, Kantor learned that a concrete slab floor of the dwelling had collapsed approximately 4.5 inches and required repair or replacement.  The collapse of the slab caused the bearing walls to move and other damage to the upper second-story portion of the house requiring work to level it back to the condition prior to collapse, and

1

work on the lower level including the replacement of slab, supporting grade beam and retaining walls, walls and flooring. Prior to discovering the collapsed slab, Kantor had begun remodeling work on his home and had placed the contents of the lower floor on the second floor above the area of the collapse. The weight of the contents above caused the transfer of weight through the bearing walls to collapse the slab.

The complaint further alleged Kantor provided notice of the collapsed slab to Mid-Century in December 2009 and Mid-Century failed to make a full and fair investigation of the loss. After acceding to Kantor's request to reopen the file in November 2010 to consider additional information, Mid-Century denied his claim despite the fact that the damage was covered under paragraph 10 of Section I, Extensions of Coverage in the Policy as a collapse of a structural part of the dwelling. Based on the foregoing allegations, the complaint asserted causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing and prayed for judgment including general and special damages, attorney fees, and punitive and exemplary damages.

Mid-Century filed its motion for summary judgment in April 2012. In its motion, Mid-Century argued it was entitled to judgment as a matter of law because the damage to the concrete slab was not a "collapse" under the terms of the Policy. Mid-Century also argued that even if there was a triable issue as to whether the damage constituted a "collapse" under the Policy, any such collapse was not caused directly by one of the covered collapse perils, such as "weight of persons, animals, contents or equipment."

Subsequently, the trial court held a hearing on August 1, 2012, and thereafter entered an order granting Mid-Century's motion for summary judgment. The order stated: "Plaintiff alleges that he had placed contents from the lower floor of his home on the second floor above the area of a 'collapsed' concrete slab, and that the weight of the contents above caused the transfer of the weight through the bearing walls to collapse the slab. Plaintiff alleges that Defendant breached the insurance policy by failing to pay Plaintiff for the repair of the collapse, which is covered under the policy. [¶] The subject policy defines 'collapse' as 'a sudden and accidental, actual and complete falling down or caving in of the building structure or of a structural part of the building structure.' While

2

the evidence on this motion shows that a portion of the slab dropped in elevation by 4.5 inches, it does not show there was a 'collapse' within the meaning of the policy. Plaintiff's admissible evidence is insufficient to show there was a 'complete falling down or caving in' of the slab, or that there was any 'sudden' movement of the slab. [Citations to record.] [¶] Because Defendant did not breach the policy, it did not act in bad faith and therefore the 2nd cause of action also lacks merit. [Citation.] [¶] . . . [¶] [¶] Defendant's objections nos. 2-9 & 13-18 are sustained . . . ." In sustaining those evidentiary objections by Mid-Century, the trial court excluded sections of declarations by Robert Bradsby, a licensed architect, and Kevin Dawson, a claims handling expert, which Kantor submitted in opposition to summary judgment.

Judgment was entered on August 20, 2012, and notice of entry of judgment was served by mail on August 29, 2012. Kantor filed a timely notice of appeal on October 17, 2012.

DISCUSSION

As noted above, Mid-Century moved for summary judgment on two grounds, viz., (1) the damage to the concrete slab does not constitute a "collapse" under the terms of the Policy and (2) even if a "collapse" occurred, it was not caused by the "weight of persons, animals, contents or equipment," such as to fall within the Policy coverage for "collapse." The trial court granted summary judgment on the first ground only, and did not reach the issue of causation central to the second ground asserted by Mid-Century for summary judgment. Accordingly, the key issue before us is whether the undisputed scope and extent of the damage to the subject concrete slab constituted a "collapse" within the meaning of the Policy.

To resolve this issue, we shall first set forth the relevant Policy language, before outlining the legal principles governing a determination of insurance coverage. Then we shall describe the scope and scale of the damage to the subject concrete slab, as reflected in the undisputed record facts, apply the governing legal principles to the undisputed facts, and determine de novo whether the trial court properly granted summary judgment.

3

(See *Krantz v. BT Visual Images* (2001) 89 Cal.App.4th 164, 167 [appellate court reviews order granting summary judgment de novo].)

### *Policy Language*

Section I of the Policy, relating to Property Coverage, includes a section describing "Uninsured Types of Loss or Damage" and "Excluded Causes of Loss or Damage." Paragraph 29 of "Excluded Causes of Loss or Damage" lists "Collapse" with the proviso that: "[W]e do provide limited coverage for collapse of a building structure or any structural part of a building structure in Section I—Extensions of Coverage, Collapse of Building Structure or Structural Part of the Building Structure."

Paragraph 10 of Section I—Extensions of Coverage is entitled "Collapse of Building Structure or Structural Part of the Building Structure." Paragraph 10 states in pertinent part: "We cover loss or damage to covered property caused by collapse of a building structure or any structural part of the building structure. . . . The collapse must be a sudden and accidental, actual and complete falling down or caving in of the building structure or of a structural part of the building structure. A structural part of the building structure means a part of the building, which if it fell down or caved in, would threaten the structural integrity of the building structure. Substantial impairment of a building structure or structural part of a building structure without a sudden and accidental, actual and complete falling down or caving in is not a collapse. Collapse does not mean imminent or threatened collapse. Collapse does not include movement, settling, cracking, bulging, shrinkage, heaving or expansion, whether natural or otherwise, of the building structure or a structural part of the building structure unless an actual and complete falling down or caving in has occurred."

### *Applicable Legal Principles*

" 'Where no dispute surrounds material facts, interpretation of an insurance policy presents solely a question of law.' [Citation.]" (*Carson v. Mercury Ins. Co.* (2012) 210 Cal.App.4th 409, 426.) And as we stated in *Mercury Ins. Co. v. Pearson* (2008) 169 Cal.App.4th 1064, 1070 (*Mercury Ins.*), "Where a case turns on the interpretation of an insurance policy, the court reviews the policy's terms under the ordinary rules of contract

interpretation.  [Citation.]  If the policy language is clear and explicit, it governs.  [Citation.]  If the policy terms are ambiguous or uncertain, the court must attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations.  [Citation.]  If this rule does not resolve the ambiguity, it must be resolved against the insurer.  [Citation.]"

Furthermore, "[i]n determining whether an ambiguity exists, the words of the policy must be interpreted according to the plain meaning that a layperson would ordinarily attach to them.  [Citation.]  Policy language is ambiguous when it reasonably may be interpreted in two or more ways.  [Citation.]  'Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists.'  [Citation.]  Moreover, the language must be interpreted in the context of the policy as a whole, and in light of the circumstances of the case.  It cannot be deemed to be ambiguous in the abstract.  [Citation.]"  (*Mercury Ins., supra,* 169 Cal.App.4th at p. 1070.)

"Policy exclusions are strictly construed.  [Citation.]  Exceptions to exclusions on the other hand, are broadly construed in favor of the insured.  [Citation.]  As a result, ' "an insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. . . ." '  [Citation.]  Thus, 'the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language.'  [Citation.]"  (*Jordan v. Allstate Ins. Co.* (2004) 116 Cal.App.4th 1206, 1214 (*Jordan*).)

### Scope and Extent of the Property Damage

Kantor's residence is a two-story structure; the surface area on the first floor living area is a concrete slab, and the living area above rests on wooden two-inch by twelve-inch floor joists.  Damage to the first floor concrete slab was first discovered in December 2009, when, in the course of remodeling work, a contractor tore up the carpet on the first floor and found there was a large crack in the concrete slab and the slab was caved in approximately four inches.

Following this discovery, Kantor retained MC Construction Services (MC Construction) to investigate.  In the report prepared by R. Mark McCarter, President of MC Construction, dated December 24, 2009, the damage is described as follows:

5

"During my site walk [on December 9], I observed severe, recessed elevation to your concrete slab. In addition, the entire slab has numerous cracks that radiate from this sunken slab area. We returned to your residence at a later date and measured elevation differentials throughout the basement slab. There is a 4.5 inch differential at the worst area of the slab."

On December 28, 2009, per Kantor's request, MC Construction provided a proposal "to perform epoxy injection crack repairs and floor leveling repairs" that entailed injecting epoxy into 45 linear feet of cracks to the retaining wall and 245 linear feet of cracks on the concrete slab, and installing Pro Spec Level Set to level the concrete slab floor in place. On February 25, 2010, MC Construction carried out a "void survey" and reported there was approximately 52 square feet of slab that had "significant void space underneath the concrete," with voids ranging from one inch to 13 inches in depth. According to MC Construction's "void calcs," 33 bags of material would be required to fill the voids. Michael McGill, President and Principal Engineer of MMS Design Associates completed a site inspection at the Kantor residence in April 2011 at the behest of Mid-Century's claims representative, and reported "the residence was still undergoing remodel and interior construction. New 'slate' material flooring was being installed and covers the lower level concrete slab. With the new flooring material in place, it was not possible to observe the current slab condition. We also could not observe the supporting fill or native soil type beneath the slab, nor any of the defects in the previous slab which have subsequently been repaired."

In his deposition in November 2011, Kantor described cracks in the concrete slab and stated he saw "a slab that had collapsed, . . . the flexion looked like about three to four inches" over a range of 12 to 15 linear feet. Kantor did not photograph the damage to the slab. While the remodeling and repair works to the first floor were in progress, Kantor moved into the upper half of the house.

*Analysis*

As noted above, the Policy *excludes* loss or damage caused by "Collapse." However, as an exception to that exclusion, the Policy covers loss or damage due to

"collapse" of the building structure or any structural part of the building structure where the collapse constitutes "a sudden and accidental, actual and complete falling down or caving in of the building structure or of a structural part of the building structure."

In short, to constitute "collapse" under the Policy, the "caving in" must be "actual and complete," because the adjectives "actual and complete" modify both gerund phrases in the disjunctive clause, "falling down or caving in." (See, e.g., *Ward General Ins. Services, Inc. v. Employers Fire Ins. Co.* (2003) 114 Cal.App.4th 548, 554 [noting that "the first adjective in a series of nouns or phrases [] modif[ies] each noun or phrase in the following series unless another adjective appears"]; and *In re Jesusa V.* (2004) 32 Cal.4th 588, 622 [noting the " ' "ordinary and popular" ' meaning of the word 'or' is well settled. [Citation.] It has a disjunctive meaning: 'In its ordinary sense, the function of the word "or" is to mark an alternative such as "either this or that." ' [Citation.]"].)

Further, although exclusions are "generally viewed through a more critical prism, the principle that words are considered in their 'ordinary and popular sense' is not discarded, and, thus, in interpreting a word in an insurance policy, including a word in an exclusion, a court may consult and consider definitions found in a common dictionary, provided the court does not disregard the policy's context, and maintains an eye on the fundamental goal of deciding how a layperson policyholder might reasonably interpret the exclusion's language." (*Baker v. National Interstate Ins. Co.* (2009) 180 Cal.App.4th 1319, 1340.) In Merriam-Webster's Collegiate Dictionary, "actual" is defined as "existing in act and not merely potentially" and "existing in fact or reality"; "complete" is defined as "fully carried out," "thorough," "total, absolute." (Merriam-Webster's Collegiate Dict. (10th ed. 2001) pp. 12, 235.)

In the context at bar, these dictionary definitions reflect how a proverbial layperson policyholder would interpret the Policy language, "actual and complete . . . caving in." In short, a layperson policyholder would understand that language to mean an actual—not potential—total, absolute and thorough caving in of the concrete slab. (Cf. *Jordan, supra,* 116 Cal.App.4th at p. 1221 ["It seems self-evident that the policy's use of the term 'entire' collapse necessarily must refer to an actual, not an imminent collapse.

7

For a building or a portion thereof to sustain an 'entire collapse' must mean that it has entirely collapsed, that is 'wholly,' 'completely,' or 'fully.' [Citation.]"].)

Indeed, the language in the insuring clause at issue (the Extension of Coverage for Collapse) emphasizes the total and complete nature of the damage required in order to constitute a "collapse" under the Policy. More than "substantial impairment" of the building structure or structural part of a building structure is required; "[c]ollapse does not mean imminent or threatened collapse" and "does not include movement, settling, cracking, bulging, shrinkage, heaving or expansion, whether natural or otherwise, of the building structure or a structural part of the building structure unless an actual and complete falling down or caving in has occurred." Because Mid-Century has phrased these exceptions to "collapse" in "clear and unmistakable language" (*Jordan, supra,* 116 Cal.App.4th at p. 1214), that language must govern. (See *Mercury Ins., supra,* 169 Cal.App.4th at p. 1070.)

Here, even construing the exception to the exclusion for "Collapse" broadly in favor of the insured, as we must (see *Jordan, supra,* 116 Cal.App.4th at p. 1214), the undisputed evidence shows the concrete slab had numerous cracks in it and, at its worst point, had subsided, sunk, or partially caved in at one area to a depth of around four or five inches. By contrast, nothing in the record indicates that the damage amounted to a total, absolute, and thorough caving in of the concrete slab, such as to constitute a "collapse" within the meaning of the Policy. Kantor, however, asserts we should remand because whether a "collapse" occurred is a question of fact, citing *Jordan,*[1] and argues there is a triable issue regarding whether an actual collapse occurred, as shown by an

---

[1] Kantor refers to a "collapse" of the rear deck of his property caused by overloading it with building materials. However, Kantor cannot use an alleged collapse of his rear deck to raise a triable issue of fact on whether the concrete slab actually collapsed, as the complaint alleged only a collapse of the concrete slab and did not allege a collapse of the rear deck. The summary judgment proceeding is a test of the pleadings (see, e.g., *FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 382), and a plaintiff opposing summary judgment may not advance a new unpleaded legal theory to defeat the motion. (See *City of Hope Nat. Medical Center v. Superior Court* (1992) 8 Cal.App.4th 633, 639.)

admission by Mid-Century, in its initial denial letter, that the concrete slab was "sinking."[2]

Kantor's reliance on *Jordan* is misplaced. Similarly to our analysis above, the *Jordan* court examined the dictionary definition of "dry rot" before concluding a policy exclusion for "wet or dry rot" applied to damage caused by fungus. (See *Jordan, supra,* 116 Cal.App.4th at pp. 1215–1216.) The *Jordan* court found the policy at issue was ambiguous as to whether, despite that exclusion, "wet or dry rot" damage would be covered under a claim for "collapse." The court resolved that ambiguity in favor of the insured, noted the parties had not addressed "with appropriate evidentiary support" the question of whether the damage amounted to an "imminent" collapse or an "actual" collapse as required under the policy, and stated that "[w]hether such a collapse occurred in this case is a factual matter that the trial court must resolve in the first instance." (*Id.* at pp. 1221–1222.) On that basis, the court reversed the summary judgment in favor of the insurer and remanded for further proceedings. (*Id.* at p. 1223.) In contrast to *Jordan,* however, in our case the Policy is not ambiguous; the parties presented all available evidence regarding the scope and extent of the damage to the concrete slab; the parties fully briefed the issue of whether the damage to the concrete slab constituted a "collapse" under the Policy, and the trial court resolved the issue in favor of Mid-Century. Accordingly, *Jordan* does not mandate reversal in this case.[3]

---

[2] The letter to Kantor dated January 19, 2010, stated, in regard to the loss reported by Kantor in December 2009, that the "claim was for cracking and *sinking* of the concrete slab in the lower level of your home."

[3] Kantor also contends reversal is mandated because the trial court committed prejudicial error in excluding the declaration of Robert Bradsby, a licensed architect, and the opinions of Kevin Dawson, a claims handling expert, submitted by Kantor in opposition to summary judgment. A trial court's ruling on the admissibility of expert testimony is reviewed for abuse of discretion. (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 187.) However, even if the trial court's ruling amounted to an abuse of discretion, any error was harmless: The excluded evidence bears on the issue of causation of the damage, rather than the scope and extent of the damage, and thus was irrelevant to the issue of whether the actual damage amounted to a total, absolute, and thorough caving in of the concrete slab, thereby constituting a "collapse" within the

In sum, upon de novo review, we conclude the trial court properly granted summary judgment in favor of Mid-Century on the grounds that the damage to the concrete slab is not a covered loss under the Policy.

**DISPOSITION**

The judgment is affirmed.  Appellant shall bear costs on appeal.

_____

Sepulveda, J.*

We concur:

_____

Margulies, Acting P.J.

_____

Banke, J.

* Retired Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

---

meaning of the Policy.  We also reject Kantor's assertion that the trial court improperly granted summary judgment on his bad faith claim.  (See *Benavides v. State Farm General Ins. Co.* (2006) 136 Cal.App.4th 1241, 1250 ["an insured cannot maintain a claim for tortious breach of the implied covenant of good faith and fair dealing absent a covered loss"].)