NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 17 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AMCO INSURANCE COMPANY,

        Plaintiff-Appellee,

  v.

CYNTHIA MCGRUDER, AKA Cynthia
Kiefer; DERON KIEFER,

        Defendants-Appellants,

 and

CAMERON KIEFER; et al.,

        Defendants.

No. 22-55279

D.C. No. 2:20-cv-10360-JVS-SK

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted March 8, 2023
Submission Vacated July 18, 2023
Resubmitted July 18, 2023[**]
Pasadena, California

Before: COLLINS, FORREST, and KOH, Circuit Judges.

_____

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] This case was originally argued and submitted to a panel consisting of Judges Kleinfeld, Watford, and Collins. After Judge Watford resigned from the court and Judge Kleinfeld became unavailable, Judges Forrest and Koh were drawn to replace them pursuant to General Order 3.2(h), and the submission to the prior panel was vacated. Judges Forrest and Koh have reviewed the briefs, record, and video recording of the prior oral argument. The reconstituted panel has unanimously concluded that this case is suitable for decision without further oral argument. *See* FED. R. APP. P. 34(a)(2)(C).

Deron Kiefer and Cynthia McGruder, defendants in a declaratory judgment action by AMCO Insurance Company ("AMCO") to establish the liability limits of an automobile insurance policy, appeal from the district court's grant of summary judgment to AMCO. We affirm.

## I

This case arises from an unusual series of events. Kiefer is himself a licensed insurance "broker/agent" and the owner of a small insurance agency called "Gold Mountain Insurance Services, Inc." Kiefer is married to Cynthia McGruder, and they have a son named Cameron. It is undisputed that Kiefer, at McGruder's instruction, purchased an automobile insurance policy for his family from AMCO. A copy of the policy is present in the record before us. To be more precise, *ten* copies of that policy are present, dating from December 2017 through April 2019. That is because Kiefer—an insurance professional with 34 years of experience in the business—frequently updated the policy via an online portal accessible to both Kiefer and AMCO, resulting in changes to various terms in the policy. AMCO asserts that, each time Kiefer modified the policy online, AMCO mailed a new copy of the modified policy to Kiefer and McGruder's home address. Every single one of the ten copies of the policy in the record before us is labeled with Kiefer and McGruder's home address, the accuracy of which the couple does not dispute. Moreover, an AMCO representative filed a declaration under penalty

2

of perjury stating that updated copies of the policy were in fact mailed to that address, as well as sent electronically to Kiefer's company, Gold Mountain. All ten copies of the policy in the record contain identical liability limits: $25,000 per person and $50,000 per occurrence. We will refer to this as a "25/50" policy.

The policy's liability limits present the central question in this appeal. The parties' dispute began when the couple and their son, Cameron, were sued based on the allegation that Cameron "r[an] over" and then "back[ed] over" a high school employee with the family's AMCO-insured Mercedes Benz on February 8, 2019—allegedly while the employee was attempting to prevent Cameron from "fleeing the scene" after she witnessed him steal items from a concessions stand at a high school basketball game. *See* First Amended Complaint, *Solis v. Kiefer et al.*, 2020 WL 5991935, at ¶ 7 (Cal. Super. Ct. 2020). Kiefer and McGruder claimed insurance coverage under their automobile insurance policy from AMCO. But Kiefer insisted—despite all ten copies of the policy in the record listing identical liability limits of $25,000/$50,000—that, when originally purchasing the policy from AMCO, he had *really* selected liability limits *ten times* that high: $250,000/$500,000.[1] Specifically, Kiefer insisted that—when originally

---

[1] On May 10, 2019—*after* the February 8, 2019 incident giving rise to the suit against the family—Kiefer requested (and was granted) increased liability limits to $250,000/$500,000. Kiefer concedes in his declaration that *after* he and McGruder were notified by AMCO, in "April or May, 2019," that the relevant policy had

3

purchasing automobile insurance for his own family at McGruder's request—he went online and, via a "scroll down menu" listing various options for coverage, "requested," at McGruder's direction, an automobile insurance policy from AMCO with liability limits of $250,000/$500,000. According to Kiefer's declaration before the district court, "[t]here is absolutely no question in my mind that I deliberately, purposefully, and actually selected the option of '250/500', and not '25/50'." AMCO responded that it had mailed him many copies of the policy, all of which plainly listed the lower 25/50 limits; that Kiefer had frequently accessed and modified the policy via the online portal, placing him on notice of the 25/50 limits; and that there was no evidence, other than Kiefer's after-the-fact declaration, that Kiefer had ever requested the higher 250/500 limits prior to the February 2019 incident. In response, Kiefer claimed that he never saw any of the mailed notices; alleged that he had never checked the policy's liability limits, online or otherwise; insisted that he had in fact "requested" a 250/500 policy from the online scroll-down menu; and theorized that a technical error in AMCO's

25/50 limits, he requested that the policy be changed to include higher limits of 250/500. The premium on the policy then increased accordingly: from $1,073.12 for the April 2019 version of the policy with lower limits to $1,632.28 for the May 2019 version of the policy with higher limits. In other words, Kiefer concedes that the May 2019 copy of the policy was not issued to him prior to the relevant February 2019 incident. The revised May 2019 policy is therefore irrelevant to our review, except in one respect: it confirms that, at the time of the relevant February 2019 incident, Kiefer was paying an insurance premium commensurate with the lower 25/50 limits, not the 250/500 limits.

internal computer system must have erroneously generated a 25/50 policy. Kiefer claims that "I am the only witness to the fact that I requested liability limits of $250,000/$500,000."

AMCO brought this declaratory judgment action in federal court to establish the true liability limits in Kiefer and McGruder's policy. The district court granted summary judgment to AMCO, and Kiefer and McGruder appeal.

## II

We need not address the parties' dispute regarding whether, as a factual matter, Kiefer did (or did not) select the 250/500 policy on the online scroll-down menu. Nor need we address the question whether Kiefer's allegation on that score is so implausible that a reasonable jury could not accept it. *Cf. Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). For the reasons we shall explain, we affirm the district court's grant of summary judgment regardless of which option Kiefer in fact selected from the scroll-down menu, meaning that the issue is immaterial to a proper resolution of this case. *See* FED. R. CIV. P. 56(a).

Regardless of whether Kiefer, as he claims in his declaration, indeed "requested" the 250/500 higher liability limits on the scroll-down menu, there is no

5

dispute that AMCO *did not actually issue him that policy*. The policy AMCO issued him was—Kiefer does not dispute—a 25/50 policy. There are many copies of that policy in the record, and Kiefer does not claim that AMCO ever, prior to the February 2019 incident, actually issued him a 250/500 policy. (Kiefer argues that AMCO *should* have issued him a 250/500 policy when he clicked the correct option on the scroll-down menu, not that AMCO *actually* did issue him a 250/500 policy.) The undisputed fact that AMCO never *issued* a 250/500 policy leaves Kiefer with four possible legal arguments—two based on the factual assumption that Kiefer erroneously did *not* select the higher 250/500 limits on the scroll-down menu, and two based on the factual assumption that Kiefer *did* correctly select the higher 250/500 limits on the scroll-down menu. We consider and reject each argument in turn.

## A

Kiefer and McGruder's first pair of arguments rests on principles of California agency law. We reject both versions of the argument.

## 1

Kiefer and McGruder contend that, if Kiefer made a mistake and—contrary to McGruder's instructions—did *not* actually select the 250/500 policy from the online scroll-down menu, AMCO is bound by Kiefer's negligent error because Kiefer, in selecting the insurance policy at McGruder's direction, was acting as

6

*AMCO's* legal agent. California agency law forecloses that argument. In purchasing insurance for his own family, Kiefer was *not* acting as AMCO's legal agent, and AMCO is not responsible for any error by Kiefer in selecting automobile insurance for his own family.

Under California law, even an insurance "agent" is sometimes a *legal* agent for the insured, not the insurer. "If an insurance agent is the agent for several companies, and either selects the company with which to place the insurance or picks an insurer at the insured's direction, the insurance agent is the agent of the insured, not the insurer." *Mercury Ins. Co. v. Pearson*, 87 Cal. Rptr. 3d 310, 317 (Cal. Ct. App. 2008). Kiefer asserts in his declaration that "my wife, Cynthia McGruder, directed me, as the licensed and appointed Agent for AMCO Insurance Company," to buy insurance from AMCO. Kiefer explains that he is the "President, CEO, and sole shareholder of Gold Mountain Insurance Services, Inc.," a "Licensed California Insurance Agency," and that he himself is a "licensed insurance broker/agent." Kiefer attached to his declaration a list of companies with which his company, Gold Mountain, is authorized to transact, only one of which is AMCO. Kiefer also states that he has "relationships with other insurance companies for which I place personal automobile insurance." Therefore, Kiefer's own declaration makes clear that he "is the agent for several companies" and "pick[ed] an insurer at the insured's direction," which makes him "the agent of the

7

insured, not the insurer." *Mercury*, 87 Cal. Rptr. 3d at 317. AMCO is therefore neither bound by, nor responsible for, any error by Kiefer in selecting the incorrect liability limits.

2

For the same reasons, AMCO was not legally required to issue Kiefer and McGruder a 250/500 policy, even if Kiefer *did* select that option via the online scroll-down menu. Kiefer assumes that AMCO would be bound to accept any such request by Kiefer, but Kiefer's assumption is wrong. That is because, as noted above, Kiefer was acting as the agent for *McGruder* in selecting the policy, and—as McGruder's agent—was not empowered to bind AMCO at 250/500 simply by selecting a policy option from AMCO's online scroll-down menu. *See Mercury*, 87 Cal. Rptr. 3d at 317. Nor did AMCO ever, prior to the relevant incident, issue the couple a 250/500 policy.[2]

*      *      *

In short, it does not matter whether Kiefer really clicked "25/50" or "250/500" on AMCO's online scroll-down menu. Kiefer's agency-law argument

---

[2] Kiefer could, as a theoretical matter, have argued that the 25/50 policy AMCO issued was a *counteroffer* to Kiefer's request for a 250/500 policy, not an actual insurance contract. But Kiefer does not make that argument, for obvious reasons. For one thing, Kiefer paid (and AMCO accepted) insurance premiums under the contract, so both parties clearly accept the existence of the insurance contract. For another, with no mutually assented-to (and hence valid) insurance contract, Kiefer and McGruder would be entitled to no insurance coverage at all.

8

fails under either factual assumption.

## B

We now turn to, and reject, Kiefer's separate argument that one or more of the parties made a mistake, and that the parties' insurance contract should therefore be equitably reformed to include the higher 250/500 limits.

## 1

"Since reformation is an equitable remedy, it may be denied if the mistake was the result of 'the want of that degree of care and diligence which would be exercised by persons of reasonable prudence under the same circumstances.'" *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 262 Cal. Rptr. 716, 726 (Cal. Ct. App. 1989) (quoting *Fraters Glass & Paint Co. v. Sw. Constr. Co.*, 290 P. 45, 47 (Cal. Ct. App. 1930)). "The reformation of a policy on the ground of mistake without the exercise of reasonable care on the part of the insured is not to be encouraged." *Taff v. Atlas Assur. Co.*, 137 P.2d 483, 487 (Cal. Ct. App. 1943). The California Supreme Court has denied reformation where the plaintiff (1) alleged a unilateral mistake; (2) failed to make "allegations of diligence sufficient to excuse the long delay in discovering the alleged mistake"; and (3) made no "showing that [plaintiff] was prevented from reading the contract or from fully comprehending the meaning of the language used." *Miller v. Lantz*, 71 P.2d 585, 587 (Cal. 1937). And for good reason: were it otherwise, plaintiffs could

pay low insurance premiums for minimal coverage, wait until an accident occurred, and then claim that they had really purchased higher-quality insurance all along. *See supra* at 3 n.1.

Kiefer has clearly acted unreasonably and, in doing so, has failed to meet California's reasonableness standards for reformation of a contract based on unilateral mistake. Kiefer, despite his 34 years of experience in the insurance business, never reviewed "a hard copy of the coverages for the AMCO Policy"; never checked the policy for its liability limits; and generally exercised no "diligence sufficient to excuse the long delay in discovering the alleged mistake." *Lantz*, 71 P.2d at 587. His claim for reformation of the contract based on his own unilateral mistake therefore fails as a matter of law.

In addition, "[r]eformation for unilateral mistake is not available unless the mistake of one party was known or suspected by the other party at the time of the execution of the document." *Cedars-Sinai Med. Ctr. v. Shewry*, 41 Cal. Rptr. 3d 48, 64 (Cal. Ct. App. 2006). There is no evidence in the record, nor does Kiefer argue in his opening brief, that AMCO suspected or knew of Kiefer's alleged mistake, as required to support a claim for reformation based upon unilateral mistake. That provides a second and independent ground for rejecting, as we do, Kiefer's claim for reformation based on unilateral mistake.

## 2

Kiefer could, theoretically, have argued that he *correctly* selected the higher 250/500 limits and that the contract should be reformed to include the higher limits because AMCO made a mistake by subjectively *intending* to write a policy with the higher 250/500 limits, but *accidentally* writing a policy with the lower 25/50 limits.  Thus, the argument would go, both parties really meant to agree at 250/500, and the contract should be reformed to reflect that *mutual* mistake.

As an initial matter, Kiefer has forfeited that argument by failing to raise mutual mistake in his opening brief.  *Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1033 (9th Cir. 2008).  In any event, a request for equitable reformation based upon mutual mistake is, once again, subject to a reasonableness standard that Kiefer's conduct in this case does not meet.  *Appalachian Ins. Co.*, 262 Cal. Rptr. at 725–26.

**AFFIRMED**.