Filed 2/27/24  Aguila v. Nong CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| HENRY AGUILA et al., | B327285 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 22STCV24716) |
| v. | |
| JULIE NGOC NONG et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed.

The Tym Firm and Ronald D. Tym for Plaintiffs and Appellants.

Nemecek & Cole, Michael McCarthy and Daniel L. Reback for Defendant and Respondent Julie Ngoc Nong.

Gordon Rees Scully Mansukhani and James K. Holder for Defendants and Respondents John Fitzpatrick Vannucci and Law Offices of John Fitzpatrick Vannucci.

—————————————

Plaintiffs and appellants Henry Aguila, Thee Aguila, Inc. (TAI), and Rocio Rosales challenge the trial court's decision sustaining demurrers without leave to amend filed by their former attorneys, defendants and respondents Julie Ngoc Nong and John Fitzpatrick Vannucci, to plaintiffs' legal malpractice claims.[1]  Plaintiffs allege that in the underlying litigation against their insurance company, defendants failed to withdraw a settlement offer contrary to plaintiffs' instructions and allowed judgment to be entered on the accepted offer.

The trial court agreed with defendants that Aguila and TAI lacked standing because they assigned their economic interest in the underlying case to Rosales before the alleged malpractice, and that Rosales could not state a claim for malpractice because, among other reasons, her claim was time-barred.

Plaintiffs contend they can cure the defect as to Aguila and TAI's standing by amending their complaint to allege that Rosales later reassigned a portion of the case back to Aguila and TAI without violating California's prohibition on the assignment of malpractice claims, or that despite court filings to the contrary Aguila and TAI did not in fact assign all their economic interest in the underlying case to Rosales.  They also argue the trial court's statute of limitations ruling was erroneous because the amended complaint that added Rosales as a plaintiff relates back to the timely original complaint.  We disagree and affirm, as we explain below.

---

[1] The complaint also named as defendants NT Law, the name under which Nong does business, and the Law Offices of John Fitzpatrick Vannucci.

## FACTS AND PROCEEDINGS BELOW

In 2019, Aguila and TAI filed suit in federal court against Penn-Star Insurance Company alleging breach of a commercial insurance policy. The docket in the case indicates that defendants represented Aguila and TAI in the litigation, but it does not list Rosales, who is Aguila's wife, as a plaintiff, nor as a client of defendants. In July 2021, Aguila and TAI submitted an offer under Federal Rules of Civil Procedure, rule 68 (28 U.S.C.) and Code of Civil Procedure section 998[2] to settle the case for $1,995,000. Penn-Star accepted the offer on August 5, 2021, and the federal district court entered final judgment on the basis of the settlement on August 17, 2021. Plaintiffs allege they instructed their attorneys to withdraw the settlement offer after Penn-Star accepted it because Penn-Star's acceptance attempted (in ways plaintiffs do not explain) to alter the terms of the offer, but the attorneys instead permitted judgment to be entered.

On June 22, 2021, about one month before Aguila and TAI submitted their settlement offer, a judgment creditor of Aguila filed a notice of lien in the case, and in September 2021, after the district court had entered judgment, the creditor filed a motion to apply the proceeds of Aguila and TAI's judgment to the judgment

---

[2] These provisions allow a party to serve a settlement offer on its opponent. If the recipient rejects the offer and then fails to obtain a more favorable judgment or award, it is liable for its opponent's litigation costs from the time of the offer. (*Madrigal v. Hyundai Motor America* (2023) 90 Cal.App.5th 385, 397 [Code Civ. Proc., § 998], review granted Aug. 30, 2023, S280598; *Lang v. Gates* (9th Cir. 1994) 36 F.3d 73, 74 [Fed. Rules Civ. Proc., rule 68, 28 U.S.C.].) Unless otherwise specified, subsequent statutory references are to the Code of Civil Procedure.

creditor. Rosales filed a motion to intervene alleging that she had orally agreed with Aguila to "fund all of the subsequent fees and costs of the present litigation in exchange for an assignment to her by [Aguila and TAI] of all of their economic interests in . . . the present litigation." She argued that she should be allowed to intervene because her interest in the litigation was superior to that of the lien claimant, and that her "interests cannot be adequately represented by any of the parties to the present litigation." As an exhibit, Rosales included a document dated April 27, 2021, in which Aguila agreed to assign and transfer to her in return "[f]or value received . . . all economic interest in the case," as well as a screenshot from an email application indicating that Aguila sent the assignment agreement to Rosales on May 1, 2021. Aguila filed a declaration affirming that he was "the 100 [percent] owner [of TAI] at the time"[3] and that he had "assign[ed] 100 [percent] of [Aguila and TAI]'s economic interest in the . . . litigation" to Rosales.

On August 1, 2022, Aguila and TAI filed the complaint in the instant case alleging that defendants had committed professional negligence by "fail[ing] to follow plaintiffs' instructions to withdraw an offer to settle and then allow[ing] judgment to be entered on the accepted offer." As a result, Aguila

---

[3] On May 11, 2021, in a separate case, the superior court ordered Aguila to turn over all of his shares in TAI to a different judgment creditor upon service of a writ of execution. In subsequent contempt proceedings in that case, the superior court found that Aguila was aware of the pending turnover order, but transferred his shares in TAI to his wife Rosales before the order was issued.

and TAI claimed they were unable to obtain the full $38,999,172 they sought in damages in the case.

Defendant attorneys demurred on the ground that Aguila and TAI lacked standing: because they had no economic interest in the case at the time of the alleged negligence, Aguila and TAI could not have suffered any damages. Before the trial court ruled on the demurrer, plaintiffs filed the operative first amended complaint adding Rosales as a plaintiff. In the new complaint, plaintiffs alleged that, as a result of the assignment, "Rosales is a proper plaintiff in this action. Plaintiffs are unsure of which, or all, of the named plaintiffs are the proper plaintiffs to prosecute this action; as such, all possible plaintiffs have been named." (Capitalization omitted.)

Defendants again demurred, and the trial court sustained the demurrer and dismissed plaintiffs' complaint without leave to amend. The court found that Aguila and TAI lacked standing because, "The alleged malpractice by the defendant attorneys occurred after [the] assignment to Rosales." Rosales likewise lacked standing because, "The docket in the underlying federal case does not show that the defendants in this case ever represented Rosales. In fact, the docket shows that Rosales attempted to intervene in the federal case through another attorney . . . . As a result, defendants' alleged malpractice could only be as to Aguila and [TAI]." (Fn. omitted.) Even if Rosales did have standing, the court concluded her claim would be barred by the one-year statute of limitations for legal malpractice claims. (§ 340.6.) Rosales was added as a plaintiff in the first amended complaint, filed November 28, 2022, more than one year after the federal district court entered judgment on the basis of the offer to compromise.

## STANDARD OF REVIEW

"In assessing whether the trial court erred in this ruling, we ask two questions: '(1) Was the demurrer properly sustained; and (2) Was leave to amend properly denied?' [Citation.]" (*Engel v. Pech* (2023) 95 Cal.App.5th 1227, 1234-1235 (*Engel*).) In answering the first question, we must "determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense." (*Regina v. State of California* (2023) 89 Cal.App.5th 386, 396.) In our review, we " 'must assume the truth of the complaint's properly pleaded or implied factual allegations' " (*Banis Restaurant Design, Inc. v. Serrano* (2005) 134 Cal.App.4th 1035, 1038), subject to the exception that we are "not required to accept the truth of alleged facts in an amended complaint that are inconsistent with the allegations in a superseded complaint unless the inconsistencies are adequately explained." (*Phoenix Mechanical Pipeline, Inc. v. Space Exploration Technologies Corp.* (2017) 12 Cal.App.5th 842, 846.) We may also take judicial notice of a party's pleadings and positions in other cases and disregard allegations in the current complaint that contradict the earlier pleadings. (*Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 344.)

We review for abuse of discretion the trial court's decision to deny the plaintiff leave to amend (§ 472c, subd. (a)), and in so doing "must determine whether there is a reasonable possibility that the defect [in the pleading] can be cured by amendment." (*Phoenix Mechanical Pipeline, Inc. v. Space Exploration Technologies Corp., supra*, 12 Cal.App.5th at p. 847.) Although it is the plaintiff's burden to show how the complaint can be amended, " 'a plaintiff can make "such a showing . . . for the first

time to the reviewing court" [citation].' "  (*Mercury Ins. Co. v. Pearson* (2008) 169 Cal.App.4th 1064, 1072.)

## DISCUSSION

### A.  Plaintiffs' Proposed Amendment Would Not Cure Aguila and TAI's Lack of Standing

"Standing is related to the requirement contained in . . . section 367 that '[e]very action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute.'  (. . . § 367.)  The real party in interest is generally the person who has the right to sue under the substantive law."  (*River's Side at Washington Square Homeowners Assn. v. Superior Court* (2023) 88 Cal.App.5th 1209, 1225.)  "Where someone other than the real party in interest files suit, the complaint is subject to a general demurrer.  (. . . § 430.10 . . . .)"  (*Estate of Bowles* (2008) 169 Cal.App.4th 684, 690.)

As a general rule, a party has standing to sue and is the real party in interest if he or she has " 'suffered or is about to suffer an injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented to the adjudicator.' "  (*CashCall, Inc. v. Superior Court* (2008) 159 Cal.App.4th 273, 286, quoting *Holmes v. California Nat. Guard* (2001) 90 Cal.App.4th 297, 315.)  The trial court concluded that plaintiffs' own filings in the underlying suit against Penn-Star showed that Aguila and TAI lacked standing.  In their declarations in the insurance case, Aguila and Rosales stated that Aguila, acting on behalf of himself and TAI, had assigned all economic interest in the case to Rosales in April 2021.  Defendants' alleged wrongdoing occurred at some point between August 5, 2021, when Penn-Star accepted the offer and August 17, 2021 when the federal district court entered

7

judgment. Because Aguila and TAI no longer had any economic stake in the outcome of the case at this point in August 2021, the trial court found that they could not have been injured by their attorneys' failure to withdraw the settlement offer.

In their appellate briefing, plaintiffs do not take issue with the trial court's reasoning. Instead, they argue they can cure the defect by amending the complaint to allege that, at some later point, "Rosales assigned back to Aguila and TAI 50 [percent] of their previous economic interests in the [insurance case], excluding amounts which had been deposited with the federal court as part of an interpleader case arising from the" insurance case.

We disagree that the proposed amendment would allow Aguila and TAI to sufficiently allege standing. Plaintiffs do not specify when the alleged reassignment occurred, but they concede it happened "*after* the alleged failure of [d]efendants . . . to follow the direction of [plaintiffs] to withdraw the settlement offer" (italics added). This is consistent with the declarations Aguila and Rosales submitted in the underlying litigation in September 2021, one month after judgment was entered, which mentioned only the initial assignment to Rosales, and said nothing about any purported assignment back to Aguila and TAI. By plaintiffs' own admission, then, Aguila and TAI did not regain an economic interest in the underlying case until *after* the alleged damage caused by defendants occurred in August 2021.

This is fatal to Aguila and TAI's argument because it means that the only one whose economic interests could have been harmed by defendants' alleged failure to withdraw the settlement offer was Rosales, because at the time of that alleged failure only she would have been entitled to the proceeds of any

8

larger judgment. Thus, Rosales alone had standing to sue for malpractice.[4] Rosales was free to assign 50 percent of the economic interest in the underlying case back to Aguila and TAI after the settlement, but "legal malpractice claims are not assignable as a matter of California public policy" (*Curtis v. Kellogg & Andelson* (1999) 73 Cal.App.4th 492, 504) and Rosales's alleged reassignment thus could not have included any such claims from the time when she was allegedly injured.

After the alleged reassignment, Aguila received an economic interest in the settlement with Penn-Star and nothing more. He was in a position analogous to that of one of the plaintiffs in *Keru Investments, Inc. v. Cube Co.* (1998) 63 Cal.App.4th 1412, who purchased an earthquake-damaged apartment building with full knowledge of the defects. (*Id.* at p. 1415.) When the plaintiff later discovered new information suggesting that a contractor had done substandard work in a seismic retrofit for the previous owner, it sued the contractor. (*Id.* at p. 1416.) The court held that the plaintiff lacked standing because the cause of action "arose against [the contractor] either when the defective work was completed or when the building sustained damage as the result of the Northridge earthquake. Neither the wrongful act nor the damages occurred while [the plaintiff] was the owner." (*Id.* at p. 1423.)

The same reasoning applies here, because the wrongful act and damages are alleged to have occurred when Rosales owned

---

[4] For the purposes of our decision, we accept as true plaintiffs' allegation that, "after the assignment [from Aguila and TAI to Rosales], [d]efendants . . . directly represented Rosales in pursuing her claims."

100 percent of the economic proceeds of the lawsuit against Penn-Star. Any claim that malpractice damaged the lawsuit's value belonged to Rosales, because she owned all of the economic interest in the case against the insurance company at the time the asserted malpractice occurred, and thus was the only one economically injured by that alleged malpractice. That Aguila and TAI later acquired a partial interest in the lawsuit after the alleged malpractice damaged its value does not give them a right to sue for malpractice that previously occurred when they had no economic interest in the lawsuit. By the time Rosales purportedly reassigned a portion of the economic interest in the Penn-Star case to Aguila and TAI, the settlement was final; the wrongful act and resulting damage had already occurred. Rosales could transfer some or all of her monetary interest in the settlement proceeds to Aguila and TAI (subject of course to competing lienholder claims), but as noted above she could not assign any malpractice claim she had to Aguila and TAI given California's prohibition on such assignments.

For the first time at oral argument, plaintiffs proposed amending their complaint to allege that the purpose of the assignment was to give Rosales a security interest in the proceeds of the suit as collateral for Rosales's financing the expenses of the insurance case, and not all of the economic interest in the insurance lawsuit. The written assignment agreement signed by Aguila and filed by plaintiffs in the insurance case makes no mention of this arrangement, but plaintiffs explain that an oral agreement between Aguila and Rosales nevertheless existed.

We assume without deciding that plaintiffs did not forfeit this argument by failing to make it in their briefing. This new

10

amendment would not cure Aguila and TAI's lack of standing because it would run afoul of the sham pleading doctrine, under which "a pleader cannot circumvent prior admissions by the easy device of amending a pleading *without explanation*." (*Womack v. Lovell* (2015) 237 Cal.App.4th 772, 787.) The amendment proposed at oral argument is only the latest in a series of steps by plaintiffs to change their allegations to suit their current needs, with no regard to inconsistencies with their prior positions. In the insurance case, when it was necessary for Rosales to establish "a property interest in the present litigation and the proceeds of the [f]inal [j]udgment superior to those of" Aguila's creditor, plaintiffs presented the assignment as a transfer "of *all* of [Aguila and TAI's] economic interests in and to the present litigation." (Italics added.) When it became convenient in this case to attempt to show that both Aguila and Rosales had suffered an economic injury and thus had standing, plaintiffs proposed amending the complaint "to allege that . . . Rosales assigned back to Aguila and TAI 50[ percent] of their previous economic interest in the" insurance case. Finally, at oral argument, they put forward a new theory that despite its plain language the initial assignment was not a transfer of all of Aguila's and TAI's economic interest in the case, but only gave Rosales a security interest. Plaintiffs made no effort to square the new allegation with their previous claims. These are not efforts to "correct[ ] erroneous allegations or . . . ambiguous facts," but rather are precisely the type of "abuse of process" the sham pleading doctrine was designed to prevent. (*Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 751.)

11

**B.    Rosales's Claim Was Barred by the Statute of Limitations**

Turning to Rosales, as to her the trial court sustained the demurrer without leave to amend both because the docket in the underlying lawsuit showed that Rosales was not defendants' client, and because the first amended complaint, which added Rosales as a plaintiff, was not filed within the one-year statute of limitations for legal malpractice. (§ 340.6.) Rosales takes issue with both of these conclusions. We need not consider whether Rosales was defendants' client, because assuming that she was, the trial court was correct that the statute of limitations had lapsed.

Section 340.6, subdivision (a) provides that "[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission." In this case, the alleged wrongful act, the failure to withdraw the settlement offer, must have occurred no later than August 17, 2021, when the trial court entered judgment on the basis of the settlement. The original complaint by Aguila and TAI was filed within one year, on August 1, 2022, but the first amended complaint, which added Rosales as a plaintiff, was not filed until November 28, 2022.

Rosales contends her suit was nevertheless timely because the first amended complaint relates back to the original complaint. Under the relation-back doctrine, an amended complaint filed after the statute of limitations expires is deemed timely if the original complaint was timely and the amended

complaint is sufficiently similar to the original. (See *Estrada v. Royalty Carpet Mills, Inc.* (2022) 76 Cal.App.5th 685, 714-715.) In particular, an amendment may relate back to an earlier complaint if it "substitutes a plaintiff with standing in place of a plaintiff who lacks standing" (*San Diego Gas & Electric Co. v. Superior Court* (2007) 146 Cal.App.4th 1545, 1550), so long as "the test for relation back is otherwise satisfied." (*Engel*, *supra*, 95 Cal.App.5th at p. 1238, fn. 3; accord, *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 243-244.)

The court in *Engel* summarized the test for relation back in cases involving the substitution or addition of a new plaintiff. "A new plaintiff's claims relate back to claims asserted in a previously and timely filed complaint if the new plaintiff is seeking to enforce the same right as a previously named plaintiff (because, in that case, the amendment relies on the same general set of facts, involves the same injury, and refers to the same instrumentality of the defendant's conduct). [Citation.]" (*Engel*, *supra*, 95 Cal.App.5th at p. 1236.) But "a new plaintiff's claims do *not* relate back if the new plaintiff is seeking to 'enforce a[ ] . . . right' 'independent' of the right asserted by the previously named plaintiff(s). [Citations.]" (*Id.* at p. 1237.) This occurs when the new plaintiff alleges a different legal liability or obligation, has claims based on a distinct injury, or seeks to impose greater liability than the original plaintiff did. (*Ibid.*) In essence, we must determine "whether adding the new plaintiff merely corrects a ' "misnomer in the description of the [plaintiff]" ' or instead 'interject[s] a new party into the litigation for the first time under the guise of a misnomer.' [Citations.]" (*Id.* at p. 1238.)

13

*Engel*, like this case, involved a claim of legal malpractice. An accountant and the limited liability partnership (the LLP) of which he was " 'the principal' " (*Engel*, *supra*, 95 Cal.App.5th at p. 1232) jointly hired a lawyer to sue a client that had not paid a bill. In the ensuing litigation, only the LLP, not the accountant personally, was a plaintiff. When the collection litigation proved unsuccessful, the accountant filed suit in his own name against the lawyer for professional negligence and related claims. The original complaint was timely, but two months later, after the statute of limitations had expired, the accountant filed an amended complaint adding the LLP as a plaintiff. (*Id.* at pp. 1232-1233.)

The trial court sustained without leave to amend the attorney's demurrer, and the Court of Appeal affirmed. The court concluded that the amended complaint did not relate back to the original because the lawyer's " 'legal liability or obligation' to the LLP is 'different' and 'distinct' from his 'legal liability or obligation' to Engel." (*Engel*, *supra*, 95 Cal.App.5th at p. 1238.) Each client "owns its own potential malpractice claims against" the lawyer, and a suit by one client did not put the lawyer on notice of potential liability to the other. (*Id.* at p. 1239.) In other cases, courts have likewise rejected the application of the relation-back doctrine where an amended complaint added new plaintiffs with different rights from the original plaintiff. (E.g., *San Diego Gas & Electric Co. v. Superior Court*, *supra*, 146 Cal.App.4th at pp. 1550-1553 [addition of new heir in a wrongful death suit]; *Diliberti v. Stage Call Corp.* (1992) 4 Cal.App.4th 1468, 1469-1471 [substitution of a plaintiff injured in a car accident in place of an uninjured passenger].)

14

By contrast, cases where courts apply the relation-back doctrine to allow a substitution in the name of the plaintiff typically involve the assertion of the same claim under a different name. In other words, these cases indeed involve "correct[ing] a ' "misnomer in the description of the [plaintiff]." ' " (*Engel*, *supra*, 95 Cal.App.5th at p. 1238.) For example, in *Jensen v. Royal Pools* (1975) 48 Cal.App.3d 717, where a condominium owner's association lacked standing to sue for a negligently built swimming pool, the relation-back doctrine allowed individual condominium owners to substitute themselves as plaintiffs. (*Id.* at pp. 720-723.) In *California Air Resources Bd. v. Hart* (1993) 21 Cal.App.4th 289, where a state administrative agency listed itself rather than the state as plaintiff in a suit against a motorcycle dealership to enforce pollution laws, it was able to correct the error after the statute of limitations had expired and proceed with the case. (*Id.* at pp. 300-301.) Finally, in *Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, the court held that the relation-back doctrine allowed a plaintiff to substitute the trustee in bankruptcy in place of herself as plaintiff. (*Id.* at pp. 1008-1011.) In that case, the plaintiff sued her employer for wrongful termination and sexual harassment after filing for bankruptcy, but because her suit was based on events that occurred prior to bankruptcy, the cause of action belonged to the bankruptcy estate. (*Id.* at pp. 998-999.)

Rosales contends that her case is similar to those described above and distinguishable from *Engel* because Rosales, as assignee, "step[ped] into the shoes of Aguila and TAI." That may be the case as to the underlying litigation (see *California Bank & Trust v. Piedmont Operating Partnership, L.P.* (2013) 218 Cal.App.4th 1322, 1347 [" ' " 'The assignee "stands in the shoes"

15

of the assignor, taking his rights and remedies, subject to any defenses which the obligor has against the assignor prior to notice of the assignment' " ' "]), but not as to the alleged legal malpractice in this case. The assignee does not instantly become the client of the assignor's attorney, and, as we noted above, legal malpractice claims are not assignable. (*Engel*, *supra*, 95 Cal.App.5th at p. 1242.) Indeed, the situation in the instant case appears more fraught with complexity than the joint representation of the accountant and LLP in *Engel*. According to plaintiffs, the defendants agreed to continue representing both Aguila and Rosales in the litigation against Penn-Star after Aguila had assigned all his economic interest to Rosales, leaving defendants with multiple clients with potentially competing interests.[5] Rosales herself soon recognized this situation was untenable, and obtained separate representation for her motion to intervene because, as she wrote, "[t]he plaintiffs [that is, Aguila and TAI] cannot adequately represent . . . Rosales' interests here." In these circumstances, the initial complaint filed by Aguila and TAI would not have put defendants on notice that they faced potential liability to Rosales, and the relation-back doctrine does not apply.

Rosales also alleges that the first amended complaint is timely under the doctrine of delayed discovery. The one-year statute of limitations for legal malpractice does not begin running until "the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the

---

[5] Plaintiffs imply that Aguila kept some type of noneconomic interest in the case after the assignment, but they do not explain what.

wrongful act or omission." (§ 340.6, subd. (a).) Plaintiffs contend they should have been given leave to amend the complaint to allege "that [Rosales] did not learn of the underlying facts giving rise to the malpractice claim until February 2, 2022." On that date, Rosales purportedly "was informed by [defendants] in a Zoom call that the federal judge in the underlying action had actually in fact expressly offered [defendants] the opportunity to withdraw the [section] 998 offer (despite its purported acceptance by the Penn-Star) and go to trial, and that [defendants], contrary to Rosales' instructions, declined."

We are not persuaded. In her motion to intervene in the underlying litigation, filed September 30, 2021, Rosales stated that "[o]n August 17, 2021, [the federal district court] issued a [f]inal [j]udgment . . . in favor of plaintiffs and against defendant Penn-Star Insurance Company . . . in the amount of $1,995,000 purportedly pursuant to an accepted [section] 998 [o]ffer." In doing so, Rosales acknowledged she was aware of the "wrongful act" that was the basis of her subsequent allegation of malpractice, i.e., that defendants "failed to follow plaintiffs' instructions to withdraw an offer to settle and then allowed judgment to be entered on the accepted offer." A subsequent admission by defendants that the district court would have allowed them to withdraw the settlement offer even after Penn-Star accepted it[6] might have been helpful to plaintiffs in proving

_____

**6** Plaintiffs do not explain under what authority the federal court could have allowed them to withdraw the offer after its acceptance, even if the court had been inclined to do so. "General principles of contract law apply [to section 998 offers] insofar as 'such principles neither conflict with nor defeat [the statute's]

17

their case, but it would not have changed the fact that Rosales was already aware that defendants had failed to follow her instructions to withdraw the settlement offer.

## DISPOSITION

The trial court's judgment is affirmed.  Defendants are awarded their costs on appeal.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

CHANEY J.

---

purpose[ ]' [citation]," and an unqualified acceptance of such an offer creates a "binding settlement."  (*Siri v. Sutter Home Winery, Inc.* (2022) 82 Cal.App.5th 685, 691.)