[No. C002768. Third Dist. Feb. 25, 1988.]

ALAN EDDY et al., Plaintiffs and Appellants, v.
RALPH I. SHARP et al., Defendants and Respondents.

860

**COUNSEL**

E. Elizabeth Summers and Arnold David Breyer for Plaintiffs and Appellants.

Genese Dopson Smith, Bandell Swanson and Alan Swanson for Defendants and Respondents.

**OPINION**

**CARR, Acting P. J.**—Plaintiffs Alan Eddy and Linda Eddy (the Eddys) appeal from a summary judgment in favor of defendants Ralph I. Sharp, Inc., dba J.M. Sharp Insurance Agency, and James Sharp (Sharp) and from a denial of their motion for reconsideration. They contend there are triable issues of material fact as to whether Sharp negligently misrepresented to them the terms of a prospective insurance policy and breached a contract to insure. The contentions have merit. We shall reverse the judgment.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiffs are the owners of a building in downtown Yreka who rent to both residential and commercial tenants. Prior to August 1980 the building was insured by the Safeco Insurance Company. At that time they decided to change insurance agents. Defendant James Sharp is a licensed independent insurance agent. He represents the Great American Insurance Company and other insurance companies. Alan Eddy instructed his bookkeeper to call Sharp to obtain coverage similar to the coverage provided by the Safeco policy.

In response to this inquiry, Sharp's employee sent the Eddys an insurance proposal accompanied by a cover letter. The cover letter advised the Eddys that the most competitive program for the type of building and occupancy involved was a package called "Safepak" offered by the Great American Insurance Company (Great American) under its business owners program. The cover letter then described the coverage under the Safepak policy as "'All Risk' except for the perils on the exclusion list." The insurance proposal also described the coverage as "'All Risk' subject to All Risk Property Coverage Exclusion list attached for reference." This exclusion list contains eight exclusions.[1] There is no exclusion listed for loss due to water backing up through drains or sewers, nor does that type of loss reasonably come within any other exclusion on the list. Nothing in the cover letter, the description of coverage in the proposal, or the exclusion list informs the reader that the policy has other exclusions not contained in the exclusion list. The proposal contains the following disclaimer: "This proposal is prepared for your convenience only and is not intended to be a complete explanation of policy coverage or terms. Actual policy language will govern the scope and limits of protection afforded."

Alan Eddy read the proposal and concluded it satisfied his needs. He instructed his bookkeeper to go ahead and order the Safepak policy. When the policy was delivered, the Eddys did not read it.

On December 17, 1982, the Yreka City sewer system adjacent to the Eddys' property became clogged during a rainstorm and sewage drained into their two basement apartments, damaging the property and resulting in

---

[1] The "All Risk Property Coverage Exclusions" lists the following exclusions: (1) wear, tear, deterioration, inherent defect, smog, mechanical breakdown, shrinkage, bulging or expansion of pavements, foundations, walls, roofs or ceilings; (2) earth movement; (3) vandalism and malicious mischief; (4) enforcement of local or state laws concerning demolition or repair of buildings; (5) loss caused by explosion of steam boilers; (6) loss caused by artificially generated electrical currents; (7) dishonesty of the insured, any associate or an employee; and (8) loss caused by war or nuclear hazards.

the loss of their use as rentals. Great American refused to cover the resulting losses because of an exclusion in the policy for "loss . . . caused by, resulting from, contributed to or aggravated by . . . water which backs up through sewers or drains . . . ."

The Eddys commenced this action on December 9, 1983, against Sharp and Great American. In the second cause of action the Eddys allege that Sharp misrepresented the terms of the Safepak policy to them with no reasonable ground for believing their representations to be true. The third cause of action seeks damages for breach of the contract to insure and the fourth cause of action seeks to reform the insurance contract.[2]

Sharp answered and moved for summary judgment. The trial court granted the motion as to all three causes of action and judgment was entered in favor of Sharp.

■■■■ The Eddys then sought reconsideration of the order granting summary judgment.[3] The motion was denied. This appeal is timely taken from both the judgment and the order denying the motion for reconsideration.

## DISCUSSION

The Eddys contend that there are triable issues of material fact concerning their actions for negligent misrepresentation and for breach of the contract to insure.[4]

■ The purpose of a motion for summary judgment is to determine if there are any triable issues of material fact, or whether the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c; *Powell* v. *Standard Brands Paint Co.* (1985) 166 Cal.App.3d 357, 361-362 [212 Cal.Rptr. 395].) The affidavits of the moving party are first considered; they must contain facts establishing every element necessary to sustain a

---

[2] The first cause of action was against the City of Yreka and sought damages for a dangerous condition of its property. In November 1985 the Eddys amended the complaint to allege a fifth cause of action against the City of Yreka. These causes of action against the city were subsequently dismissed by the Eddys.

[3] A motion for reconsideration may only be considered before the entry of a judgment. (*Magallanes* v. *Superior Court* (1985) 167 Cal.App.3d 878, 882 [213 Cal.Rptr. 547].) After a summary judgment the methods of attacking the judgment are by a motion for new trial, and appeal. (*Green* v. *Del-Camp Investments, Inc.* (1961) 193 Cal.App.2d 479, 481 [14 Cal.Rptr. 420]; 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 307, p. 601.) The court, however, is free to consider a motion regardless of the label put on it by the moving party. (*Graham* v. *Hansen* (1982) 128 Cal.App.3d 965, 970 [180 Cal.Rptr. 604].)

[4] The Eddys concede they have no cause of action for reformation of the insurance contract against Sharp because Sharp is not a party to the insurance contract.

judgment in his favor. (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851, fn. 6 [94 Cal.Rptr. 785, 484 P.2d 953].) Unless the moving party presents affidavits in support of his motion which, strictly construed, comply with the statute and show that he is entitled to judgment as a matter of law, summary judgment cannot be granted even though the affidavits of the opposing party are insufficient or absent. (*Ibid.*) Because summary judgment is a drastic procedure, all doubts should be resolved in favor of the party opposing the motion. (*Id.,* at p. 852.)

■ We consider first the cause of action for negligent misrepresentation. In this state, negligent misrepresentation is a form of deceit defined as: "The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true." (Civ. Code, § 1710, subd. 2.) To be actionable as deceit, the representation must have been made with the intent to induce the recipient to alter his position to his injury or his risk. (*Gagne* v. *Bertran* (1954) 43 Cal.2d 481, 488 [275 P.2d 15].) The defendant's intent to induce the plaintiff to alter his position can be inferred from the fact that defendant knew the plaintiff would act in reliance upon the representation. (*Ibid.*)

As is true of negligence, responsibility for negligent misrepresentation rests upon the existence of a legal duty, imposed by contract, statute or otherwise, owed by a defendant to the injured person. (*Hale* v. *George A. Hormel & Co.* (1975) 48 Cal.App.3d 73, 86 [121 Cal.Rptr. 144].) The determination of whether a duty exists is primarily a question of law. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40 [123 Cal.Rptr. 468, 539 P.2d 36].)

"One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, . . . facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." (Rest.2d Torts, § 551, subd. (2)(e); *Wells* v. *John Hancock Mut. Life Ins. Co.* (1978) 85 Cal.App.3d 66, 72, fn. 8 [149 Cal.Rptr. 171]; *Westrick* v. *State Farm Insurance* (1982) 137 Cal.App.3d 685, 691, fn. 3 [187 Cal.Rptr. 214].) ■ Since " '[i]t is a matter almost of common knowledge that a very small percentage of policy-holders are actually cognizant of the provisions of their policies . . . and [t]he insured usually confides implicitly in the agent securing the insurance, . . .' " (*Raulet* v. *Northwestern etc. Ins. Co.* (1910) 157 Cal. 213, 230 [107 P. 292], *Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 783 [157 Cal.Rptr. 392, 598 P.2d 45]), an insurer's duty includes the duty "reasonably to inform an insured of the insured's

rights and obligations under the insurance policy." (*Davis* v. *Blue Cross of Northern California* (1979) 25 Cal.3d 418, 428 [158 Cal.Rptr. 828, 600 P.2d 1060].) The courts of this state have found the insurer has a duty to advise its insureds of the availability of and procedure for initiating arbitration (*id.*, at pp. 428-429); to notify the insured of a 31-day option period in which to convert his group insurance policy into individual coverage after termination (*Walker* v. *Occidental Life Ins. Co.* (1967) 67 Cal.2d 518, 523-524 [63 Cal.Rptr. 45, 432 P.2d 741]); to advise an assignee of a life insurance policy taken as security for a loan to the insured that the policy is worthless (*Wells* v. *John Hancock Mut. Life Ins. Co., supra,* 85 Cal.App.3d at pp. 71-72); and to inform the insured of relevant exclusions in the policy. (*Westrick* v. *State Farm Insurance, supra,* 137 Cal.App.3d 685 at p. 692.)

In this case it is an undisputed fact that James Sharp is an independent insurance agent. He represents several insurance companies including the Great American. If an insurance agent is the agent for several companies and selects the company with which to place the insurance or insures with one of them according to directions, the insurance agent is the agent of the insured. (3 Couch on Insurance (2d. ed. 1984) § 25:112, p. 477; *Robinson* v. *Franwylie* (1978) 145 Ga.App. 507, 512-513 [244 S.E.2d 73].) Where the agency relationship exists there is not only a fiduciary duty but an obligation to use due care. (1 Witkin, Summary of Cal. Law (8th ed. 1973) Agency and Employment, §§ 84-85, pp. 704-705.) Sharp owed a duty of due care to the Eddys under agency principles. (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594 [83 Cal.Rptr. 418, 463 P.2d 770]; Rest.2d Agency, § 379, p. 177.)

The Eddys assert that by the provisions of sections 780, 781 and 790.03 the Legislature has made it clear that insurance agents and brokers have the duty to fully and accurately disclose the provisions of the policies they obtain for the insured. Insurance Code section 780 provides in relevant part: "An insurer or officer or agent thereof, or an insurance broker or solicitor, shall not cause or permit to be issued, circulated or used, any misrepresentation of the following: [¶] (a) The terms of a policy issued by the insurer or sought to be negotiated by the person making or permitting the misrepresentation." Section 781 provides in part: "A person shall not make any misrepresentation (a) to any other person for the purpose of inducing, or tending to induce, such other person . . . to take out a policy of insurance, . . ."

In addition, section 790.03 of the Insurance Code declares the making of a statement misrepresenting the terms of an insurance policy to be an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Section 790.03 applies to both agents and brokers as

well as other enumerated persons. (Ins. Code, § 790.01.) Sections 780, 781 and 790.03 state a statutory duty to accurately describe the provisions of the policies which agents and brokers procure for their clients.

In this case the trial court concluded that Sharp owed no duty to the Eddys in reliance on *Jones* v. *Grewe* (1987) 189 Cal.App.3d 950 [234 Cal.Rptr. 717]. In that case the defendants filed a cross-complaint against the insurance brokers who had sold them $300,000 in liability insurance after plaintiffs obtained a $1.5 million judgment against them in the main action. In their cross-complaint defendants alleged that the brokers had held themselves out as insurance consultants and experts; that they had taken care of defendants' insurance needs for 10 years, during which time defendants relied on their expertise; and that the brokers "expressly and impliedly" represented to the defendants that their insurance protection was adequate. The complaint further alleged that the brokers breached their duty towards the defendants when they failed to provide them with liability insurance sufficient to protect their personal assets and satisfy the $1.5 million judgment entered against them. (*Id.,* at p. 953.) The appellate court affirmed a judgment of dismissal after the demurrer of the brokers was sustained without leave to amend. The court held that the general duty of reasonable care which an insurance agent owes his client does not include the obligation to procure a policy affording the client complete liability protection;[5] and distinguished those cases in which it has been held that an insurer has a duty to inform the insured of his rights and obligations under the policy, particularly when the insured's apparent lack of knowledge may result in a loss of benefits or a forfeiture of rights. (*Id.,* at pp. 955-956.)

■ In this case Sharp's duty to the Eddys arose because Sharp undertook to prepare an insurance proposal for the Eddys to review prior to purchasing a policy of insurance. Sharp thus came under a duty of due care to accurately inform the Eddys of the policy's provisions. The cover letter described the coverage on the building as "All Risk" except for perils on the exclusion list. The proposal also states that coverage is "All Risk" subject to the exclusions listed. The exclusion list makes no reference to a loss caused by water backing up through sewers or drains nor does it contain a disclaimer that it is not a complete list of exclusions. We cannot say as a matter of law that the disclaimer contained in the insurance proposal is sufficient to override and nullify the list of identified exclusions. We conclude there is a triable issue of material fact as to whether Sharp negligently misrepresented the terms of the policy to the Eddys.

[5] See also *Pabitzky* v. *Frager* (1985) 164 Cal.App.3d 401, 403 [210 Cal.Rptr. 426]; *Gibson* v. *Government Employees Ins. Co.* (1984) 162 Cal.App.3d 441, 452 [208 Cal.Rptr. 511]; *Wagner* v. *State Farm Mutual Auto. Ins. Co.* (1985) 40 Cal.3d 460, 469 [220 Cal.Rptr. 659, 709 P.2d 462].)

■ On the issue of whether there is a triable issue of fact that Sharp did or did not breach the contract to insure the Eddys, the trial court granted judgment for Sharp on the basis of the undisputed evidence that the Eddys had requested coverage similar to their previous policy. This policy excluded losses caused by water backing up through sewers or drains. The trial court found Sharp did not breach the contract to provide similar insurance coverage. We perceive the trial court misconstrued what contract existed between Sharp and the Eddys.

■ When a prospective client requests proposals from an insurance broker, that is simply a request for an offer. It is the broker who makes the offer by submitting his proposal. No contract comes into existence until the customer accepts the offer of the insurance contract. (*Hanley* v. *Marsh & McLennan, etc., Ltd.* (1941) 46 Cal.App.2d 787, 795-796 [117 P.2d 69].)

■ The Eddys' request to defendants for coverage similar to their previous policy was an invitation to Sharp to make an offer to provide coverage for plaintiffs' building. By the proposal, Sharp offered to obtain "All Risk" coverage subject to specified exclusions which did not include an exclusion for loss occasioned by water backing up through drains or sewers. When the Eddys accepted Sharp's offer, a binding contract was formed obligating Sharp to obtain the coverage outlined in the proposal. As the policy Sharp secured for the Eddys contains an exclusion for a loss which was not mentioned in the proposal, there is a triable issue of material fact with respect to whether Sharp breached its contract with the Eddys. It was error to grant summary judgment for defendants on the third cause of action.

We find there are triable issues of material fact with respect to the plaintiffs' second and third causes of action. The judgment is therefore reversed as to those causes of action.

Sims, J., and Marler, J., concurred.