[No. B123946. Second Dist., Div. Seven. May 19, 1999.]

LUIS SANCHEZ, Plaintiff and Appellant, v.
LINDSEY MORDEN CLAIMS SERVICES, INC., Defendant and
Respondent.

**COUNSEL**

Herbert Dodell and Gerald J. Miller for Plaintiff and Appellant.

Arter & Hadden, Wayne S. Grajewski and Michelle McAloon for Defendant and Respondent.

**OPINION**

**NEAL, J.—**

### SUMMARY

An independent adjuster engaged by an insurer owes no duty of care to the claimant insured, with whom the adjuster has no contract. The adjuster is not

liable in tort to the insured for alleged negligent claims handling which causes only economic loss.

## FACTS AND PROCEEDINGS IN TRIAL COURT

The relevant facts, which appear from appellant Luis Sanchez's first amended complaint, and from a status conference memorandum judicially noticed in the trial court, are as follows: Sanchez was engaged in business, transporting commercial machinery, under the fictitious business name LA Machinery Moving. Sanchez purchased cargo insurance issued by an underwriter at Lloyd's of London. A commercial dryer was damaged while Sanchez was moving it to Los Angeles. Sanchez made a claim on the cargo policy for repair of the dryer. The damage was capable of repair in one week's time, at a cost of $12,000. Sanchez advised that immediate repairs were needed because the dryer's purchaser, Five Star Dye House, was suffering business loss. Lloyd's engaged respondent Lindsey Morden Claims Services, a claims adjuster, to investigate and adjust the loss. Three months passed before the claim was paid and the repairs completed. As a result, the dryer's purchaser sued and in July 1996 obtained a judgment against Sanchez for $1,325,000.

Sanchez then sued Lloyds for breach of the cargo policy. Sanchez also sought recovery against Morden, on a negligence theory.

Morden demurred, arguing that it had no contract with Sanchez and owed him no duty of care.

The trial court sustained Morden's demurrer without leave to amend. Sanchez appealed.

## DISCUSSION

Whether a duty of care is owed is a legal question, decided by the court. (*Bily* v. *Arthur Young & Co.* (1992) 3 Cal.4th 370, 397 [11 Cal.Rptr.2d 51, 834 P.2d 745, 48 A.L.R.5th 835] [auditor is liable only to his client for negligent preparation of financial statements, and not to third persons who are strangers to the contract].) Further, it is a question of *policy*. (*Bily, supra*, 3 Cal.4th at p. 397; *Biakanja* v. *Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358] [lawyer who renders will void by negligently failing to have it witnessed owes duty of care to intended sole beneficiary].) While courts do not generally make broad policy in the manner of legislatures, they do make policy decisions in the "gaps," filling in the "open spaces" or "interstices" of the law. (Cardozo, Nature of the Judicial Process (Yale U.

Press 1921) pp. 113-114.) Courts deciding questions of duty are engaged in this limited "legislative" aspect of the judicial function.

An early enumeration of the policy concerns governing whether a duty of care should be imposed appears in *Biakanja* v. *Irving, supra,* 49 Cal.2d at page 647, which looked to: "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to defendant's conduct, and the policy of preventing future harm." (*Biakanja, supra,* 49 Cal.2d at p. 650.)

In the much more recent *Bily* the Supreme Court conducted an expanded policy analysis. *Bily* involved a claim against auditors by investors who allegedly purchased stock relying on negligently prepared financial reports. The court held that the auditors owed no duty of care to the investors.

Consistent with *Biakanja,* the *Bily* court first examined the relationship between the defendant auditors' conduct and the injury, and the blameworthiness of the auditors' conduct. The court noted that auditors' clients exert extensive control over both preparation and dissemination of financial reports, and that audit reports entail discretionary exercises of judgment. Despite these limits on auditor responsibility for the content of financial reports, auditor liability for negligence could be serious: "Although the auditor's role in the financial reporting process is secondary and the subject of complex professional judgment, the liability it faces in a negligence suit by a third party is primary and personal and can be massive." (*Bily* v. *Arthur Young & Co., supra,* 3 Cal.4th at p. 400.)

This disproportion between fault and injury, in the court's view, militated against imposing a duty of care owed from auditors to investors.

*Bily* also weighed the benefits and costs of a duty on auditors, concluding that a duty was unlikely to enhance deterrence of auditor mistakes, and probably would cause auditors to withdraw their services from some market segments and to increase their charges for services in other segments. The court concluded that the costs of imposing a duty outweighed the benefits. (*Bily* v. *Arthur Young & Co., supra,* 3 Cal.4th at pp. 404-405.)

The court also stressed the unreliability of foreseeability, in isolation, as a grounds for imposing a duty, especially where the injury is "intangible" rather than physical. (*Bily* v. *Arthur Young & Co., supra,* 3 Cal.4th at pp. 398-399.)

Finally, the court cautioned about the limits of judicial policymaking competency, stating: "In view of the nature of the problem, we refrain from

endorsing a broad and amorphous rule of potentially unlimited liability that has been endorsed by only a small minority of decided cases. As we recently stated: 'In the absence of clear legislative direction . . . we are unwilling to engage in complex economic regulation under the guise of judicial decision-making.' [Citation.]." (3 Cal.4th at p. 406.)

The considerations paramount in *Bily* likewise argue against imposing a duty of care owed by insurer-retained adjusters[1] to claimants.

Like the auditors, the insurer-retained adjuster is subject to the control of its clients, and must make discretionary judgment calls. The insurer, not the adjuster, has the ultimate power to grant or deny coverage, and to pay the claim, delay paying it, or deny it. Further, while the insurer's potential liability is circumscribed by the policy limits, and the other conditions, limits and exclusions of the policy, the adjuster has no contract with the insured and would face liability without the chance to limit its exposure by contract. Thus the adjuster's role in the claims process is "secondary," yet imposing a duty of care could expose him to liability greater than faced by his principal the insurer.

Imposing a duty also would subject the adjuster to conflicting loyalties. Insurers and insureds often disagree as to coverage or the amount of loss. An adjuster cannot argue both sides of such disputes, any more than a lawyer can represent opposite sides in a lawsuit. An adjuster owes a duty to the insurer who engaged him. A new duty to the insured would conflict with that duty, and interfere with its faithful performance. This is poor policy. (*Gay* v. *Broder* (1980) 109 Cal.App.3d 66, 75 [167 Cal.Rptr. 123] [where home loan borrower sued appraiser hired by lender, court held appraiser owed no duty of care to borrower—sound policy precluded subjecting appraiser to a duty conflicting with that owed to the lender who hired the appraiser]; *Felton* v. *Schaeffer* (1991) 229 Cal.App.3d 229, 234 [279 Cal.Rptr. 713] [physician hired by employer to perform preemployment physical owes no duty of care to applicant]; *Keene* v. *Wiggins* (1977) 69 Cal.App.3d 308, 316 [138 Cal.Rptr. 3] [doctor hired by workers' compensation insurer to evaluate disability reported employee needed no surgery or treatment; held, physician owed no duty to the employee].)

Further, as in *Bily*, the costs of imposing a duty of care would outweigh the potential benefits.

The deterrent effect of imposing a duty on adjusters is questionable. Adjusters already are deterred from neglect by exposure to liability to the

---

[1]We do not in this opinion address the duties of so-called "public adjusters," who are retained by insureds or claimants.

*insurer* who engaged them, for breach of contract or indemnity. Only some modest additional deterrence, at most, could be expected from imposing a new duty owed directly to insureds.

Imposing a duty also might benefit insureds by providing another source of recovery for injuries caused by negligent claims handling or investigation. However, in most cases this would be redundant, since the insurer also would be liable for unreasonable investigation or claims handling. Thus making the adjuster directly liable to the insured would, again, confer only a marginal additional benefit.

Weighing against these modest potential benefits of imposing a duty would be several substantial costs.

Insurance is a highly uncertain and risky endeavor, because it requires accurate predictions about the occurrence and cost of future events. Insurers are able to define and limit the risks, and to set premium levels commensurate with the risks, using complex and nuanced contracts (policies). By contrast, adjusters hired by insurers have no contract with insureds, and thus no ability to define or circumscribe their potential risks or liabilities to insureds. If adjusters faced negligence liability to insureds, market forces would tend to drive adjusting activities in-house, where they could be shielded with contractual exclusions, disclaimers, and limitations. Thus, imposing a duty would reduce, perhaps severely, the offering of independent adjuster services. Yet widespread market acceptance has shown these services to be useful and desirable.

Those adjusters continuing to operate independently despite imposition of a new duty of care would attempt to buy insurance against this liability, or create their own cash reserves, adding these costs to their charges, and passing them on to the insurers who used the adjusters' services. These insurers, in turn, would add the cost to the premiums charged to insureds. The insureds thus would end up paying more for insurance without obtaining more value because, as noted above, adjuster liability would provide only a redundant source of the recovery usually available from the insurer.

Imposing a duty would significantly depart from existing law. Until now no California case has held insurers' adjusters liable to insureds for negligence. Indeed, negligence is not among the theories of recovery generally available against *insurers* (See Croskey et al., Cal. Practice Guide: Insurance Litigation 2 (The Rutter Group 1998) ¶¶ 12:818, 11:205, pp. 12C-6, 11-48 to 11-49, rev. #1, 1996), and further, California courts have refused to extend

liability for *bad faith*, the predominant insurer tort, to agents and employees of the insurer. (*Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 824 [169 Cal.Rptr. 691, 620 P.2d 141] [employees of insurer's independent claims agency "are not parties to the insurance contract and not subject to the implied covenant" of good faith and fair dealing]; *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 576 [108 Cal.Rptr. 480, 510 P.2d 1032] [insurance adjusting firm and its employees were "total strangers to the contract of insurance" and not subject to the implied covenant of good faith].)

Adjusters doubtless have relied on the existing state of the law, taking no prudent steps to protect against negligence liability. A new rule would defeat their reasonable expectations. While consistency and predictability are not the sole objects of the law, they are important legal values which enable persons and businesses to confidently and productively plan their affairs.

Further, large litigation or transactional costs, and considerable uncertainty, probably would flow from imposition of a new duty. The nature and extent of insurer duties to insureds has been a prolific source of litigation, despite the best efforts of insurers to eliminate litigation-generating issues by drafting complex, flexible, precise policies. Adjuster liability would be an empty slate, upon which the courts would have to write a whole new body of "adjuster liability" law. They would have to do so without the aid of contracts devised by knowledgeable and imaginative private parties to give structure to the risks. Years surely would pass before the new law of "adjuster liability" was to any extent fleshed out and a degree of certainty restored.

In summary, the policy analysis mandated under *Biakanja* and *Bily* militates against imposing in California a new duty of care owed by insurer-retained adjusters to insureds.

Our conclusion is also consistent with the general law of agency. An adjuster is an agent hired by a principal, the insurer, to investigate a claim. Agents are not liable to third parties for economic loss: "An agent's mere failure to perform a duty owed to his principal may render him liable to third persons who rely on his undertaking where there is physical damage to person or property. (See Rest.2d, Agency, § 354, and Appendix, Rep. Note, p. 587.) But *where the effect is merely to cause economic loss, the law does not yet recognize liability to a third person*, except where a duty is created by statute. [Citation.]" (2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 149, pp. 144-145, italics added.)

Our decision is consistent with the majority of cases in other states, which hold that an independent adjuster hired by the insurer owes no duty of care to the insured. (*Velastequi* v. *Exchange Ins. Co.* (1986) 132 Misc.2d 896 [505 N.Y.S. 2d 779, 782] [New York]; *Dear* v. *Scottsdale Ins. Co.* (Tex. 1997) 947 S.W.2d 908, 917 [Texas]; *Hill* v. *Giuffrida* (S.D. Miss. 1985) 608 F.Supp. 648, 649 [Mississippi].)

Sanchez relies on cases from Alabama (*Baldwin Mut. Ins. Co.* v. *Brantley* (Ala. 1987) 518 So. 2d 32) and Alaska (*Continental Ins. Co.* v. *Bayless & Roberts Inc.* (Alaska 1980) 608 P.2d 281). As best we can tell, none of the defendants in the *Baldwin* case was an adjuster hired by the insurer. FCIC (Federal Crop Insurance Corporation), the claims adjuster involved, was not a defendant in the case. Thus the case does not speak to our issue. *Continental* does squarely impose negligence liability on a claims adjuster, but without offering any analysis as to whether or why a duty should be imposed. *Continental* simply relies on an earlier Alaska case where an insurer's agent was held liable to a third party for *property damage*, not economic damage (See *Continental, supra,* 608 P.2d at p. 288.) As shown above, however, agents are not liable to third parties for purely economic loss.

Thus there is no cogent persuasive authority from other jurisdictions to support imposing a duty.

In addition to the Alaska and Alabama cases, Sanchez relies on several California cases which held that an adjuster could be liable under Insurance Code section 790.03, subdivision (h) for economic injury caused by delay in claim processing. However, as appellant concedes, the Supreme Court later held that *no private right of action* lies under that section, thus abrogating the decisions Sanchez relies on. (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 304 [250 Cal.Rptr. 116, 758 P.2d 58] ["Neither section 790.03 nor section 790.09 was intended to create a private civil cause of action against an insurer that commits one of the various acts listed in section 790.03, subdivision (h)."].) The Legislature, of course, could reach a different policy conclusion than we have and pass a statute imposing a duty of care on insurer-retained adjusters. However, a statutory duty authoritatively construed as providing *no* private right of action supplies no basis for imposing a *common law* private right of action indistinguishable from the barred statutory claim.

## DISPOSITION

The judgment of the trial court is affirmed. Respondent shall recover its costs on appeal.

Lillie, P. J., and Woods, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 28, 1999.