Filed 7/19/24  APR Construction v. Premier Claims Management CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| APR CONSTRUCTION, INC. et al., | D081631 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2019-00012784-CU-IC-CTL) |
| PREMIER CLAIMS MANAGEMENT, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Keri G. Katz, Judge.  Affirmed.

Adler Law Group and Erwin E. Adler for Plaintiffs and Appellants.

Lehavi Stargardter and Limor Lehavi for Defendant and Respondent.

In this multiparty insurance dispute, plaintiffs APR Construction, Inc. and Eric Scarbrough[1] appeal from the trial court's grant of judgment on the pleadings in favor of respondent Premier Claims Management, LLC (Premier), who was acting as an independent claims adjuster for one of APR's insurers (and another defendant in this case), HDI Global Specialty SE (HDI). According to APR, Premier concealed the fact that one of its owners— Marilyn Bonetati—was also a principal in the law firm of Bonetati & Soble that HDI retained to represent APR in two underlying lawsuits arising out of APR's role in bidding on and providing construction work for the San Diego Housing Commission (the Commission). APR alleges several different fraud-based legal theories all premised on the proposition that Bonetati's dual role created an inherent conflict of interest.

The trial court granted Premier's motion for judgment on the pleadings, concluding that (1) APR's complaint did not plead any affirmative misrepresentations by Premier with the required specificity to support claims for intentional and negligent misrepresentation; (2) Premier had no legal duty to disclose its ownership to APR and thus APR could not prevail on its concealment cause of action; and (3) APR's claims also necessarily fail on the alternative ground that Soble had no conflict of interest in representing APR, and thus there was no conflict that required disclosure. On appeal, APR asserts the trial court erred because "Premier was obliged to disclose its conflict of interest to APR." (Some capitalization and boldface omitted.) We conclude the court properly granted the motion and affirm.

---

[1] The complaint was filed on behalf of APR Construction and Eric Scarbrough, but it fails to specify Scarbrough's connection to or role in APR. For simplicity's sake, we refer to plaintiffs collectively as APR.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Underlying Dispute Between APR and the Commission*

APR entered into construction contracts with the Commission for rehabilitation and accessibility upgrade work on two construction projects, referred to as the Two Sites and the Three Sites projects. These projects involved rehabilitation and accessibility upgrades of residential buildings at different sites in San Diego.

In April 2016, the Commission filed two lawsuits against APR in connection with the Two Sites and Three Sites projects (the Commission Lawsuits). A few months later, APR filed cross-complaints against the Commission, alleging breach of contract, breach of the covenant of good faith and fair dealing, and interference with contractual and/or prospective economic relations.

### B. *APR's Tender of its Defense in the Underlying Commission Lawsuits*

HDI issued APR commercial general liability insurance policies that insured APR for various periods of the time during which APR was working on the Two Sites and Three Sites projects. The policies made HDI responsible for defending suits seeking damages arising out of " 'bodily injury' " or " 'property damage' " covered by the policies. According to the complaint, Premier "is an insurance adjuster, licensed in California to adjust claims" that acted as HDI's "third party administrator."[2] The HDI policy attached to the complaint required the policyholder to report directly to Premier any occurrence that might result in a claim.

---

[2] "An independent adjuster is an agent hired by a principal, the insurer, to investigate a claim." (2 California Ins. Law Dictionary & Desk Ref., Independent Adjuster (2023 ed.) § I23.)

On June 30, 2016, APR tendered its defense in the Commission Lawsuits to HDI. According to the complaint, HDI "through its independent agent, Premier Claims, hired attorney [Marc] Soble and the law firm Bonetati & Soble as defense counsel in the Commission Lawsuits." HDI then allegedly engaged in "secret" discussions with the Commission and Allegheny Casualty Company, APR's surety in connection with the Two Sites project, to settle the Two Sites action.

According to APR, HDI "had a strong incentive to resolve the Two Sites Lawsuit and did resolve that Lawsuit despite knowing that doing so would extinguish [APR's] affirmative claims against the Commission for, inter alia, amounts due to them under the contract with the Commission, lost profits and other damages." APR asserts that until Soble informed it that HDI and Allegheny had settled the Two Sites lawsuit in December 2018, it was unaware of the settlement negotiations.[3] The complaint adds that HDI and Premier "have been similarly pressuring APR to relinquish its rights in the Three Sites Lawsuit," which remains pending.

## C.   *APR Files This Lawsuit Against Premier, HDI, and Colony*

APR filed this action against HDI and Colony, the two insurers that are alleged to have issued APR policies that covered the relevant time period at issue in the Commission Lawsuits, as well as Premier. As to Premier, the complaint incorporates by reference all of the factual allegations made against HDI. APR alleges that HDI "failed to hire independent counsel and did not inform Plaintiffs of their right to independent counsel." APR contends that HDI was obligated to provide it with independent counsel in

---

[3]   The complaint further alleges that approximately a week later, Soble informed APR that HDI did not need APR's consent to settle the Commission's claims.

the Commission Lawsuits because HDI had asserted a reservation of rights and because, in APR's view, a conflict of interest existed because Marilyn Bonetati was simultaneously the owner of Premier, the secretary and president of Bonetati & Soble, as well as HDI's agent for service of process under APR's policy.

APR asserted three causes of action against Premier: intentional misrepresentation, negligent misrepresentation, and concealment. With respect to the intentional and negligent misrepresentation causes of action, APR alleged that Premier falsely represented to it that Soble would provide APR with a "conflict-free defense." APR maintains this alleged representation was false because of the relationship between Premier and Soble's law firm, Bonetati & Soble, through the dual roles performed by Marilyn Bonetati.

APR's claim for fraud by concealment alleged that Premier had a duty to disclose the relationship between Premier and Bonetati & Soble, but that it instead actively concealed the fact that attorney Soble and the firm of Bonetati & Soble "had an inherent conflict of interest, due to the relationship between Premier Claims, Marilyn Bonetati, attorney Soble and the firm Bonetati & Soble, that precluded them from representing and defending [APR] in the Commission Lawsuits. APR alleged that if it had known of this unspecified "conflict," APR "would not have allowed" Soble to represent APR in the Commission Lawsuits. According to APR, in reliance on Premier's conduct, it "agreed to allow attorney Marc Soble . . . to defend [it]," and that, as a result, APR was harmed when Soble failed to keep APR "timely apprised of the ongoing settlement negotiations in the Two Sites Lawsuit, which ultimately caused [APR] to lose [its] affirmative claims against the Commission in that Lawsuit when Defendant [HDI] settled that action

5

without [APR's] approval." APR further alleged that once APR became aware of the alleged conflict, Soble withdrew from representing APR in the Three Sites lawsuit, which caused APR to "spend" its own "resources" to "bring[ ] Premier Claims' newly appointed defense counsel up to speed on the case, among other things."

## D. *HDI's Motion for Summary Judgment and Premier's Subsequent Motion for Judgment on the Pleadings*

HDI successfully moved for summary judgment. Among other determinations, the court concluded Marilyn Bonetati's positions in both Premier and Bonetati & Soble did not create a situation that met the criteria set forth in *James 3 Corp. v. Truck Ins. Exchange* (2001) 91 Cal.App.4th 1093 as to when an insured would be entitled to independent counsel at its insurer's expense under Civil Code section 2860. (*James 3 Corp.,* at p. 1101.)

After the trial court granted summary judgment in favor of HDI, Premier filed a motion for judgment on the pleadings, which the court granted in full. The court determined that APR's complaint did not plead any affirmative misrepresentations with the required specificity to support claims for intentional and negligent misrepresentation, and APR had not demonstrated how it could amend to remedy the pleading deficiencies. The court also concluded that Premier owed no legal duty to disclose its ownership to APR and thus APR could not prevail on its concealment cause of action. Finally, the court indicated that even absent these other determinations, Premier would be entitled to judgment on the pleadings on the ground that Soble had no conflict of interest in representing APR— a determination the trial court had previously made in connection with HDI's motion for summary adjudication—and thus there was no conflict that

6

required disclosure.  The court then entered judgment in favor of Premier on APR's complaint.

## DISCUSSION

On appeal, APR asserts that the trial court was wrong to determine that Premier had no obligation to disclose to APR that Marilyn Bonetati was a principal in both Premier and Bonetati & Soble such that it could not be liable to APR for not sharing this information.  In considering APR's assertions, we refer to the standards applicable to the granting of a judgment on the pleadings.  " 'A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action.' " (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.)  " 'A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review.' [Citation.]  'All properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law . . . .' " (*Ibid*.)

### A.   *APR Has Failed to State Claims for Intentional or Negligent Misrepresentation*

We begin by considering APR's causes of action for intentional and negligent misrepresentation against Premier.  " ' "The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation ([through either] false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." ' " (*Thrifty Payless, Inc. v. The Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230, 1239.)  "The tort of negligent misrepresentation, [is also] a species of the tort of deceit." (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1255.)  The elements of a claim for negligent misrepresentation are

7

nearly identical to those for a claim for intentional misrepresentation based on a false representation, with the exception of the second element; as to this element, for purposes of establishing negligent misrepresentation, a plaintiff need only prove the absence of reasonable grounds for believing the representation to be true, not that the defendant had knowledge of the representation's falsity. (*Bock v. Hansen* (2014) 225 Cal.App.4th 215, 231 (*Bock*); *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173–174.)

For policy reasons, California courts require a plaintiff alleging claims for species of fraud—including intentional and negligent misrepresentation— to plead such claims with particularity. (See, e.g., *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645 ["[F]raud must be pled specifically; general and conclusory allegations do not suffice. [Citations.] . . . 'This particularity requirement necessitates pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered." ' "]; *Foster v. Sexton* (2021) 61 Cal.App.5th 998, 1028 [negligent misrepresentation must be pled with specificity].) Additionally, in the case of a corporate defendant, "the plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.' " (*Lazar*, at p. 645.)

APR's intentional and negligent misrepresentations claims are based the same allegedly false affirmative representation—i.e., the allegation that "Premier Claims misrepresented to [APR] that the counsel appointed by Premier Claims . . . would provide [APR] with a conflict-free defense, and that there was no conflict of interest precluding . . . Marc Soble or Bonetati & Soble, Inc., from representing and defending Plaintiffs in the Commission

8

Lawsuits."[4] This sentence comprises the entirety of the factual basis supporting both the intentional and negligent misrepresentation claims. What is readily apparent is that this allegation fails to allege with specificity what the precise representation was, who made it, when it was made, to whom it was made, *or* the means by which it was made.

Other factual allegations elsewhere in the complaint do nothing to assist APR in this regard. If anything, they reflect the *absence* of any affirmative statement of fact by Premier about a conflict-free defense. The other allegations make clear APR's real grievance is that Premier *failed to disclose* to APR that Marilyn Bonetati was a principal in both Premier and Bonetati & Soble. For example, APR asserts that "[HDI], through its independent agent, Premier Claims, hired attorney Soble and the law firm Bonetati & Soble as defense counsel in the Commission Lawsuits but failed to hire independent counsel *and did not inform Plaintiffs of their right to independent counsel*." (Italics added.) Later, the complaint alleges that Premier "*actively concealed and/or suppressed* the fact that Marilyn Bonetati was both president of Premier Claims and president of Bonetati & Soble, the firm retained to represent Plaintiffs in the Commission Lawsuits." (Italics added.) It further asserts that "[a]s a result [of the alleged concealment], Plaintiffs were unaware of the interrelationship between Bonetati, Soble, Bonetati & Soble and Premier Claims . . . and unaware of the conflict of interest inherent in Bonetati & Soble's representation of them in the Commission Lawsuits." There is no reference to anything resembling an affirmative statement made by someone at Premier to someone at APR

---

[4] APR also separately asserts a fraud claim based on Premier's alleged concealment of facts, which we discuss later, but its causes of action for intentional and negligent misrepresentation are based on the alleged *affirmative* false representation that counsel would be "conflict-free."

9

indicating that the counsel assigned to represent APR—and paid for by HDI—would be free of any conflicting interests.

Despite the fact that the trial court relied on the lack of any specificity in APR's fraud pleading to grant Premier's motion for judgment on the pleadings, and despite the fact that Premier has also raised the issue in its respondent's brief, APR has not addressed these pleading deficiencies in its briefing on appeal. APR's failure to address this issue in its opening or reply briefs on appeal forfeits any challenge to the trial court's ruling on this ground. (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issue not raised on appeal "deemed waived"]; *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 72 [" ' " 'Issues not raised in an appellant's brief are [forfeited] or abandoned.' " ' "].) Because the trial court relied on this ground in concluding that APR failed to state claims for intentional and negligent misrepresentation, and because APR does not challenge this determination, there is no basis for reversing the trial court's conclusion that APR cannot state claims for intentional or negligent misrepresentation against Premier.[5]

**B.    *APR has failed to state a claim for fraudulent concealment.***

APR's claim for fraud through concealment involves different considerations than its claims for intentional and negligent misrepresentation. Unlike its claims based on an alleged affirmative

---

[5]    Although leave to amend is available in the context of a motion for judgment on the pleadings (as on demurrer) where "there is any reasonable possibility that the plaintiff can state a good cause of action" (*Virginia G. v. ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848, 1852), the burden of demonstrating such reasonable possibility "is squarely on the plaintiff" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318). APR's total failure to address the pleading insufficiencies means it has not even attempted to show there is a reasonable possibility of curing the identified defects.

misrepresentation that Soble was conflict-free, APR's fraud claim based on concealment is based on its allegation that Premier and Bonetati & Soble share a principal member—Marilyn Bonetati—and that Premier was under an obligation to disclose this fact to APR but failed to do so. The relationship between Premier and Bonetati & Soble was material, APR's theory goes, because that relationship created an "inherent" conflict of interest for Soble, the attorney assigned to defend it in the Commission's Lawsuits.

A fraud claim based upon the suppression or concealment of a material fact must involve a defendant who had a legal duty to disclose the fact. (Civ. Code, § 1710, subd. (3) [a deceit includes "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact"]; see *Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 606 [the elements of fraudulent concealment include "(1) concealment or suppression of a material fact; [and] (2) by a defendant with a duty to disclose the fact to the plaintiff," among others].) In large part, the parties focus on the trial court's determination that Premier, as an independent agent of HDI, owed no *duty* to APR to disclose the relationship between Premier and Bonetati & Soble. As both parties appear to concede, however, there is no authority that directly considers whether an insurer-retained independent adjuster owes a duty to disclose any relationship its principal(s) may have with an attorney retained to represent an insured. We therefore look to authorities to guide us as to the circumstances under which a duty to disclose a material fact exists.

There are generally " 'four circumstances in which nondisclosure or concealment may constitute actionable fraud.' " *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 336 (*LiMandri*).) The first circumstance is where the defendant is in a fiduciary or other confidential relationship with the

11

plaintiff. (*Ibid.*) A duty to disclose may also arise, however, in the context of nonfiduciary relationships in three other instances, with the important caveat that there must be some sort of relationship between the plaintiff and defendant which can serve as the premise for the duty arising in such circumstances: (1) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (2) when the defendant actively conceals a material fact from the plaintiff; and (3) when the defendant makes partial representations but also suppresses some material facts. (*Ibid.*; *Warner Constr. Corp. v. Los Angeles* (1970) 2 Cal.3d 285, 294.) As courts have explained, the imposition of a duty in nonfiduciary interactions in these other circumstances *presupposes* the existence of some type of relationship between the plaintiff and the defendant, pursuant to which a duty to disclose can arise. (*Hoffman v. 162 North Wolfe LLC* (2014) 228 Cal.App.4th 1178, 1187; *LiMandri*, at pp. 336–337.) "A relationship between the parties [for purposes of a duty to disclose] is present if there is 'some sort of *transaction* between the parties. [Citations.] Thus, a duty to disclose may arise from the relationship between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement.' " (*Hoffman,* at p. 1187.) In addition, statutes may impose a duty of disclosure in the context of certain transactions. (See, e.g., Civ. Code, § 1102 et seq. [seller of single-family residential real property must disclose certain matters]; Ins. Code, § 332 [parties to an insurance contract must disclose all facts that are material to the contract "and which the other has not the means of ascertaining"].)

None of the circumstances necessary to create a duty of disclosure as to APR has been alleged here. First, there are no allegations of a fiduciary or confidential relationship between Premier and APR. In fact, the other

12

allegations of the complaint identifying Premier as HDI's claims adjuster contradict the existence of such a relationship between them. (See *Thompson v. Cannon* (1990) 224 Cal.App.3d 1413, 1418 [an independent adjuster, hired by an insurance company, does not owe fiduciary duties to the insured].) Further, no transaction (or proposed transaction) has been alleged as between APR and Premier. In fact, where an independent claims adjuster has been retained by an insurer, the law recognizes the existence of a transactional relationship as between the independent adjuster and the *insurer*, not the insured. (See *Sanchez v. Lindsey Morden Claims Services, Inc.* (1999) 72 Cal.App.4th 249, 255–256 (*Sanchez*) [an insurer-retained independent adjuster does not owe a general duty of care toward the insured; among other reasons for no duty, adjuster has no contract with the insured, and instead its loyalties lie with the insurer, its client, and imposing a duty of care as to the insured would render the adjuster as having conflicting loyalties].)

To support its contention that Premier nevertheless should be held to have owed it a duty to disclose the relationship between a principal in its business and a principal in the law firm retained to represent it, APR first relies on various authorities that have imposed liability on insurance *sales* agents in connection with affirmative misrepresentations those agents made in connection with selling insurance products. For example, APR cites *Butcher v. Truck Ins. Exch.* (2000) 77 Cal.App.4th 1442, 1465–1466 (*Butcher*); *Eddy v. Sharp*(1988) 199 Cal.App.3d 858 (*Eddy*), and *Westrick v. State Farm Ins.* (1982) 137 Cal.App.3d 685 (*Westrick*), to suggest that agents of insurers may be held liable where there is a "disparity of knowledge between that agent and the policyholder." But while APR focuses on disparities in knowledge, it gives short shrift to the existence of the underlying *sales*

*transactions* in those cases—transactions that created the relationship between the sales agent and the policy purchaser pursuant to which the duty to disclose arose.

For example, in *Butcher*, the insureds were facing a malicious prosecution lawsuit and turned to their insurer to provide a defense. (77 Cal.Ap.4th at p. 1448.) When the insurer refused to defend, the insureds learned that years prior, the agent had failed to inform them that the new policy they had purchased did *not* contain coverage for malicious prosecution, even though the insureds had asked the insurer's sales agent to duplicate their prior coverage, which included malicious prosecution defense. (*Id.*, at pp. 1448–1449.) The insureds sued both the insurer on various claims including breach of contract and bad faith, as well as the agent for negligent failure to procure adequate liability insurance coverage. (*Id.* at p. 1449.) The *Butcher* court noted that California law has specifically placed on an insurance sales agent "an 'obligation to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured.' " (*Id.* at p. 1461.) An agent's "failure to deliver the agreed-upon coverage may constitute actionable negligence and the proximate cause of an injury." (*Ibid.*)

Similarly, in *Eddy*, an independent insurance sales agent advised that a proposed policy included coverage that the insured sought, but the policy did not include the requested coverage. (*Eddy, supra*, 199 Cal.App.3d at p. 862.) The insured purchased the policy in reliance on the sales agent's representations about the coverage as described in the proposal. (*Ibid.*) After the insured suffered a loss and the insurer refused coverage, the insured sued the independent sales agent for negligent misrepresentation. (*Id.* at p. 863.) The *Eddy* court relied on the Restatement (Second) of Torts,

14

section 551 to conclude that an independent sales agent has a duty to disclose certain facts: " 'One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, . . . facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.' " (*Eddy*, at p. 864.)[6]

*Westrick*, *supra*, 137 Cal.App.3d 685, likewise involves a claim against a sales agent. (*Id*. at. p. 687.) There the insured sued the sales agent for the negligent failure to inform him that a newly purchased truck involved in an accident was not covered under a 30 day automatic coverage provision in the insured's existing insurance policy. (*Id*. at pp. 688–689.) The court relied on the fact that an "insurer's duty includes the duty 'reasonably to inform an insured of the insured's rights and obligations under the insurance policy' " to conclude that a directed verdict in favor of the agent should not have been granted. (*Id*. at pp. 692–693.)

As should be clear, these authorities involve alleged omissions or misrepresentations in the course of *a transaction*—the purchasing of an insurance policy—that created a transactional relationship between the sales agent and the insured. No similar transaction between APR and Premier

---

[6] Further, the *Eddy* court noted that where independent insurance *sales* agents are involved, such as the sales agent involved in *Eddy*, the law considers the agency relationship to be as between the independent sales agent and the insured, not the insurer, and that it is the nature of this agency relationship that creates the obligations that flow from the agent to the insured. (*Eddy, supra,* 199 Cal.App.3d at p. 865.) This is opposite of what the law considers to be the agency relationship when an insurer-retained independent claims adjuster is involved in claims adjusting for an insured. (See *Sanchez, supra,* 72 Cal.App.4th at p. 255.)

was alleged here. In fact, as noted, independent claims adjusters are typically not considered to have the type of relationship with an insured that creates obligations flowing from a claims adjuster to an insured. (See *Sanchez*, *supra*, 72 Cal.App.4th at p. 255.) Rather, as our Supreme Court has explained, "California courts have held that a professional or other business entity that enters into a contract to provide services to an individual or entity does not owe a tort duty of care to a third party with respect to an economic loss allegedly incurred by the third party when recognition of such a duty of care to the third party would create a potential conflict of obligations for the professional or business entity in light of its responsibility to the individual or business with which it has contracted." (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 840, fn. 8 [citing *Sanchez*].)

APR also relies on *Bock, supra,* 225 Cal.App.4th 215, which, unlike the previous cases, does involve an insurance adjuster. APR argues that *Bock* demonstrates that an adjuster *can* be personally liable for conduct when acting as the agent of the insurer. But although *Bock* holds that tort liability for *negligent misrepresentation* may be imposed on an insurance adjuster where that adjuster makes affirmative false statements to insureds in the course of adjusting their claims, it does not hold that an independent claims adjuster has an affirmative duty to disclose any particular information, such that the adjuster may be liable for *concealment*. (Compare *id.* at pp. 226–232 [discussing situations in which law regarding negligent misrepresentation applies] with *LiMandri*, *supra*, 52 Cal.App.4th at p. 336 [discussing situations in which a duty to disclose a material fact arises for purposes of claims for concealment].) *Bock* thus provides no authority to support APR's contention that Premier had a duty to disclose to APR the relationship between Premier and Bonetati & Soble.

16

Finally, APR attempts to craft a duty to disclose Marilyn Bonetati's roles based on Insurance Code section 14039 (section 14039), which provides in relevant part: "No person licensed as an insurance adjuster shall do any of the following: [¶] . . . [¶] (c) Solicit or accept remuneration from, or have a financial interest exceeding 3 percent in, any salvage, repair, or other firm, which obtains business in connection with any claim which he or she has a contract or agreement to adjust." Even assuming that the phrase "other firm" in section 14039, subdivision (c) could be understood to include a law firm[7], the statutory prohibition on adjusting licensees from accepting remuneration from or having a sufficient financial interest in a business that obtains business "in connection with any claim which he or she has a contract or agreement to adjust" does not itself create a duty of disclosure. Had the Legislature intended for this subdivision to include a duty of disclosure, it could have written it with such a requirement, given that subdivision *(a)* of section 14039 does create such a duty by prohibiting an adjuster from "[f]ail[ing] to disclose his or her full financial interest in a contract or agreement executed by him or her for the adjustment of a claim prior to the execution thereof." (§ 14039, subd. (a).)

Further, even if section 14039, subdivision (c) could be interpreted as imposing a duty of disclosure, we remain unconvinced that this duty would be intended to benefit an insured such as APR. Rather, the concern of the Legislature in section 14039 is the potential for a conflict of interest between an adjuster and the person or entity that retained the adjuster, which in this

---

[7]    We do not intend to suggest that we are so interpreting section 14039. We merely assume that the interpretation APR proffers is correct for purposes of considering the effect of the statute.

17

case is the *insurer* (HDI).[8] For example, the two subdivisions before subdivision (c) prohibit a licensed adjuster from "(a) Fail[ing] to disclose his or her full financial interest in a contract or agreement executed by him or her for the adjustment of a claim prior to the execution thereof," and "(b) Us[ing] any misrepresentation to solicit a contract or agreement to adjust a claim." (§ 14039, subds. (a), (b).) The language of subdivision (a) demonstrates that the disclosure it requires be made to *the party with whom the adjuster is contracting.* Thus, where, as here, an adjuster contracts with an insurer to do its claims adjusting, the disclosure of the adjuster's full financial interest must be made to the insurer. Similarly, subdivision (b) prohibits the use of misrepresentation to obtain the contract to adjust a claim, which necessarily means that an insurer-retained adjuster may not make false representations *to the insurer* in order to obtain the contract. There is no reason to view subdivision (c) as being concerned with a relationship different from the relationship that is being addressed in subdivisions (a) and (b); rather, it prohibits an adjuster from self-dealing in connection with obtaining a contract for adjusting claims. (§ 14039.)

The legislative history of section 14039 further solidifies our understanding that the statute was intended to target the potential conflict between the adjuster's interests and the interests of the party with whom it contracts to provide services. The provisions that are currently found in section 14039 were originally introduced in Assembly Bill No. 1172, and were

---

[8] This obviously might be different for adjusters known as "public adjusters," i.e., those who are retained by insureds or claimants, given that in such a situation the adjuster's client would be the insured or claimant, but we have no occasion to consider that question. (See *Sanchez, supra,* 72 Cal.App.4th at p. 253, fn. 1 [declining to consider the duties that might be owed by "public adjusters" and considering only whether a duty of care is owed to an insured by an *insurer-retained* adjuster].)

enacted in 1971 as former section 7538.3 of the Business & Professions Code (see Stats. 1971, ch. 1445, § 1).[9]  An enrolled bill report to the Governor for Assembly Bill No. 1172 indicates that the bill was originally "suggested by the Bureau [of Collection and Investigative Services] to provide additional protection against adjusters' involvement in *conflict of interests which impair their primary obligation to clients* and will also close a gap in present law which permits the use of confusingly similar names as long as they do not fall within the legal description of a 'fictitious name'."  (Dept. of Agriculture and Services, Enrolled Bill Report on Assem. Bill. No. 1172 (1971 Reg. Sess.) Nov. 3, 1971, italics added.)[10]  A "client" is "[a] person or entity that employs a professional for advice or help in that professional's line of work."  (Black's Law Dictionary (11th ed. 2019) p. 320, col. 1.)  Thus, to the extent that subdivision (c) of section 14039 could be read to create an obligation on the part of an adjuster to disclose its interest in a law firm that is retained by the insurer to defend an insured in a third-party liability claim, that obligation would exist to protect the party who retained the adjuster to provide its

---

[9]     In 1980, the Legislature adopted the Insurance Adjuster Act and placed its provisions in the Insurance Code. (Stats. 1980, ch. 1190, § 11.)  As part of this enactment, the Legislature adopted section 14039 and repealed former Business & Professions Code section 7538.3, thereby transferring the substance of that provision to the Insurance Code as part of the Insurance Adjuster Act.  The language of section 14039 is identical to that of former Business & Professional Code section 7538.3, with the exception of the addition of feminine pronouns to render the provision more gender inclusive. (Compare Stats. 1971, ch. 1445, § 1, p. 2852 with Stats. 1980, ch. 1190, § 11, p. 3988.)

[10]     California courts have "routinely found enrolled bill reports, prepared by a responsible agency contemporaneous with passage and before signing, instructive on matters of legislative intent." (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 934, fn. 19.)

services.  As applied to this case, then, any obligation of disclosure that might be inferred from section 14039 would be one that is due to HDI, not APR.

In sum, the case authority and statutory authority on which APR attempts to rely all points in the same direction—that any duties of disclosure of a possible conflict of interest on the part of Premier were duties owed to HDI.  No authority offered by APR indicates that Premier owed a duty to disclose its relationship with Bonetati & Soble *to APR*.  As a result, we conclude that APR has failed to state a claim against Premier for concealment based on its failure to disclose its relationship with Bonetati & Soble.

## DISPOSITION

The judgment of the trial court is affirmed.  Respondent is entitled to costs on appeal.


DATO, Acting P. J.

WE CONCUR:


KELETY, J.


CASTILLO, J.

20